677 F.2d 259
 18 ERC 1066, 12 Envtl. L. Rep. 20,771
 NATIONAL WILDLIFE FEDERATION; Eastern Conn. Citizens Action
Group, Inc.; Stop I-84, Inc.; Conn. Committees of
Correspondence, Inc.; Connecticut Wildlife Federation; Save
Our State Committee, Inc.; and Sierra Club, Plaintiffs,
Stop I-84, Inc., Appellant,
Stop I-84 and Connecticut Fund For the Environment, Inc.;
Eastern Connecticut Citizens Action Group, Inc.;
Sierra Club and Save Our State
Committee, Plaintiffs-Appellants,
v.
Neil GOLDSCHMIDT, Secretary of Transportation; Robert E.
Kirby, Regional Federal Highway Administrator, Region 1;
Donato V. Altobelli, Division Administrator For Connecticut,
Federal Highway Administration; and Arthur B. Powers,
Commissioner, Connecticut Department of Transportation,
Defendants-Appellees.
 Nos. 670, 869, Dockets 81-6179, 81-6189.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 18, 1982.
Decided April 30, 1982.
 
 Daniel Millstone, New Haven, Conn., for plaintiffs-appellants Connecticut Fund for the Environment, Inc., Eastern Connecticut Citizens Action Group, Inc., Sierra Club, Save Our State Committee.
 Sister Arlene Violet, Providence, R. I., for plaintiff-appellant Stop I-84, Inc. of Rhode Island.
 Jacques B. Gelin, Atty., U. S. Dept. of Justice, Washington, D. C. (Anthony C. Liotta, Deputy Asst. Atty. Gen., Robert L. Klarquist, Ezra D. Rosenberg, Attys., Dept. of Justice, Kenneth N. Weinstein, Dept. of Transp., William B. Clemmens, Jr., Federal Highway Administration, Washington, D. C., Alan H. Nevas, U. S. Atty., New Haven, Conn., Frank H. Santoro, Asst. U. S. Atty., New Haven, Conn., on the brief), for defendants-appellees Neil Goldschmidt, Secretary of Transp., Robert E. Kirby, Regional Federal Highway Administrator, Region I, and Donato V. Altobelli, Division Administrator for Connecticut, Federal Highway Administration.
 Susan T. Pearlman, Asst. Atty. Gen., Wethersfield, Conn. (Carl R. Ajello, Atty. Gen., Hartford, Conn., on the brief), for defendant-appellee Arthur B. Powers, Commissioner, Connecticut Dept. of Transp.
 Thomas C. Clark, Hartford, Conn., Grant H. Miller, Jr., Clark, Mayo & Gilligan, Hartford, Conn., on the brief, for amicus curiae I-84, Yes, Inc., in support of defendants-appellees.
 David A. Zipfel, Asst. Corp. Counsel, East Hartford, Conn., for amicus curiae Town of East Hartford in support of defendants-appellees.
 Before CARDAMONE and WINTER, Circuit Judges, and CONNER, District Judge.*
 RALPH K. WINTER, Jr., Circuit Judge:
 
 
 1
 This is an appeal from Judge Cabranes' decision dismissing as premature plaintiffs' challenge to the adequacy of the Environmental Impact Statements (EIS's) prepared for two proposed sections of Interstate Highway 84 (I-84), and rejecting various challenges to the Federal Highway Administration's (FHWA) and United States Department of Transportation's (DOT) final approval of a connecting route between I-84 and Interstate Highway 86 known as the "I-84/I-86 Connector." 504 F.Supp. 314 (D.Conn.1980); 519 F.Supp. 523 (D.Conn.1981). Familiarity with Judge Cabranes' opinions is assumed.
 
 
 2
 We affirm.
 
 FACTUAL BACKGROUND
 
 3
 In 1968, Congress provided for the construction of an additional 1,500 miles of interstate highway and, on December 13 of that year, DOT approved construction of a link between Hartford, Connecticut and Providence, Rhode Island.
 
 
 4
 On January 1, 1970, the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321-4361 (1976), became law. Portions of the proposed I-84 already under construction were exempt from the NEPA. The Act applied, however, to the yet unconstructed portions and the Connecticut Department of Transportation (CDOT) had to submit EIS's, 42 U.S.C. § 4332, with respect to three portions of the proposed highway. The first, Section I, involves construction of a 12.6 mile segment of I-84 from Bolton to Windham, Connecticut. The second, Section II, is a 17.8 mile segment of I-84 from Route 6 in Windham to Killingly, Connecticut, at the Rhode Island border. Rhode Island authorities were to submit the EIS as to the Rhode Island segment of I-84. The third, the so-called I-84/I-86 Connector, comprises roughly five miles of improvements and new construction in the greater Hartford area to link portions of the two interstate highways and to alleviate local traffic.
 
 
 5
 In 1972, draft EIS's (DEIS's) were submitted for Sections I and II, and were the subject of hearings in several Connecticut towns. In December, 1975, the final EIS (FEIS) was submitted for Section I to the FHWA regional office and, in January, 1976, a FEIS was submitted for Section II. In 1978, both documents were sent to Washington, D. C., for FHWA approval known as "prior concurrence." See 23 C.F.R. § 771.14(c) (1980).[1]
 
 
 6
 In 1976, a DEIS was prepared on the I-84/I-86 Connector. This DEIS included a so-called "Section 4(f) statement," see 23 C.F.R. § 771.19 (1980), required because the proposed Connector would use land set aside as a public park. This DEIS was submitted for comment to public agencies and private organizations and public hearings were held in East Hartford and Manchester, Connecticut. In 1978, a FEIS was prepared, submitted to, and approved by, the FHWA regional office and forwarded to Washington, D. C., for prior concurrence.
 
 
 7
 In June, 1979, the FHWA deferred action on the three requests for prior concurrence because of differences with the Environmental Protection Agency (EPA). By the fall of 1979, issues concerning air quality in the Connecticut portion of the road had been resolved. Initial plans for Rhode Island construction, however, proposed the use of watershed land of the Scituate Reservoir, the main water supply for the greater Providence area, and the EPA pressed for further study of alternatives.
 
 
 8
 On October 12, 1979, Acting Assistant Secretary of Transportation Charles Swinburn gave conditional approval to the FEIS's on Sections I and II. Design work was authorized but expressly conditioned on either final approval by the DOT of an EIS for the Rhode Island segment or supplementation of the FEIS's as to the environmental impact of the Connecticut portion of I-84 on Rhode Island. The FEIS on the I-84/I-86 Connector was unconditionally approved. The FHWA Regional Administrator adopted the Agency's recommendations and informed the public, relevant state agencies, and the EPA. 23 C.F.R. § 771.14(d) (1980).
 
 
 9
 The conditional approval of Sections I and II sparked additional controversy within the federal government. On December 13, 1979, the EPA took its dispute with the FHWA to the Council on Environmental Quality (CEQ).[2] The EPA contended that even the limited approval given Sections I and II committed I-84 to a location in Connecticut which was "biase(d) against the selection of alternative non-watershed corridors in Rhode Island; and ... create(d) a situation of maximum danger to the Scituate Reservoir." The EPA requested that CEQ rescind the FHWA's conditional approval with respect to Sections I and II. No challenge was made to the approval of the FEIS covering the I-84/I-86 Connector.
 
 
 10
 On April 30, 1980, CEQ Chairman Gus Speth informed Secretary of Transportation Neil Goldschmidt that, in CEQ's view, the conditional approval of design work on Sections I and II violated NEPA. He noted that even conditional approval
 
 
 11
 ... limits and prejudices the choice of alternatives in the new Rhode Island EIS and the possible supplemental Connecticut EIS and commits federal resources prematurely.
 
 
 12
 On August 8, 1980, Secretary Goldschmidt responded by substantially modifying the FHWA's conditional approval. Goldschmidt directed that the FHWA "eliminate from further consideration the route through the Scituate Reservoir." In addition, Goldschmidt announced that no acquisition of land or construction in Connecticut would be approved unless
 
 
 13
 ... a decision is made to proceed with construction of I-84 in Rhode Island following preparation and approval of an (EIS); or ... we are directed by Congress to do so.
 
 
 14
 He permitted design work on Sections I and II to go ahead in order to save time and money in the event the project is ever undertaken.
 
 PROCEEDINGS IN THE DISTRICT COURT
 
 15
 The complaint was filed on January 28, 1980. This was subsequent to the FHWA's October, 1979, conditional approval as to Sections I and II and unconditional approval as to the I-84/I-86 Connector, but before Secretary Goldschmidt's decision to eliminate the Scituate Reservoir route and to tie construction of Sections I and II in Connecticut to approval of the Rhode Island segment.
 
 
 16
 The five-count complaint alleged violations of the Federal-Aid Highways Act, 23 U.S.C. §§ 101-156 (1976); NEPA; a provision of the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A) (1976); and a provision of the Department of Transportation Act, 49 U.S.C. § 1653(f) (1976). Specifically, it attacked the Region I administrator's conditional approval of Sections I and II and unconditional approval of the I-84/I-86 Connector.
 
 
 17
 Judge Cabranes granted defendants' motion for summary judgment as to Sections I and II on the grounds there had not been final agency action creating a controversy sufficiently ripe for judicial resolution. 504 F.Supp. at 326-327. At the same time, he deferred decision on the I-84/I-86 Connector pending further briefing. Id. at 327. Thereafter, Judge Cabranes held that the Connector had a utility independent of the proposed Hartford-Providence link, and that the FEIS and Section 4(f) statement were adequate. 519 F.Supp. at 529-36.
 
 DISCUSSION
 
 18
 Judge Cabranes' opinions are reasoned and thorough. As to the I-84/I-86 Connector, we affirm on his "second" opinion published at 519 F.Supp. 523.
 
 
 19
 As to the ripeness issue concerning Sections I and II of I-84, we add only a few words. We are governed by the finality requirement of Section 10(c) of the APA, 5 U.S.C. § 704, which is to be interpreted in "a pragmatic way," Abbott Laboratories v. Gardner, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967), with an eye toward protecting agencies from the disruption of piecemeal appeals and toward insuring that judicial review involves concrete disputes over meaningful interests, rather than abstract disputes over hypothetical governmental actions. Id. at 148-49, 87 S.Ct. at 1515.
 
 
 20
 Given those principles, there is little doubt about the proper result in this case. As plaintiffs concede, Sections I and II of I-84 may never be built. Secretary Goldschmidt's decision tied the Connecticut portion of I-84 to the problematic fate of the Rhode Island segment. So long as that decision is in effect-and the federal defendants assure us they will notify plaintiffs immediately should it be revised-the ultimate decision to build is in great doubt. A decision by us at this stage would resolve a dispute about a hypothetical highway. Courts have no business adjudicating the legality of non-events.
 
 
 21
 We have been unable to detect any legal issue our decision will foreclose from challenge if and when a decision to build I-84 is made. A FEIS for the Rhode Island segment is not due until September, 1983, creating the real possibility that environmental conditions will have changed in the years subsequent to the original FEIS's. Issues which at that time seemed crucial may well become irrelevant while newly contested matters may arise. Review now might well adjudicate matters which are ultimately immaterial and would by no means put the matter to rest, since actions brought after a decision to build I-84 has been made can challenge the present FEIS's as obsolete. In fact, it seems unlikely that construction will proceed without supplementation of the present FEIS's. For us to review them now, only to review supplementations later, would unnecessarily intrude on and delay the administrative process. It would also be a pointless use of judicial time. The proper time for review is when the future of the Rhode Island segment has been determined and a decision to build Sections I and II has been made. At that time, the relevant environmental issues can be resolved in light of FEIS supplementation. The materiality of the issues will then be clear and they will be presented in a single package.
 
 
 22
 In Environmental Defense Fund, Inc. v. Johnson, 629 F.2d 239 (2d Cir. 1980), we held that an agency recommendation that a project be studied further was not "final" within Section 10(c) of the APA. Plaintiffs seek to distinguish that case on the grounds that a FEIS had not been issued. We believe that decision is on point, however. The crux of Judge Mulligan's opinion is that a project undergoing further study may ultimately be abandoned or substantially altered and adjudication of its legality in those circumstances would be premature. That reasoning is fully applicable to the present case.
 
 
 23
 Plaintiffs also seek to place defendants on the horns of a legal dilemma. FHWA regulations prohibit design work from proceeding in the absence of a "final" EIS, 23 C.F.R. § 771.5(e) (1980).[3] Plaintiffs argue that, if the FEIS's are not "final," the design work is in violation of the regulations. If they are "final," on the other hand, plaintiffs claim they must be ripe for judicial review under Section 10(c) of the APA. The point is purely semantic. The "finality" necessary to allow advance design work is not the same as the "finality" which renders administrative action ripe for judicial review. Design should not proceed without knowledge of environmental problems and a FEIS is thus requisite. For that reason among others, a FEIS may be approved and design work may proceed, although the actual construction may occur long after and pursuant to a FEIS supplementation, for practical purposes a new and different FEIS. 23 C.F.R. §§ 771.14(i), 771.15 (1980). "Final" in this context means not "terminal" but only final until supplemented. Section 10(c) review, on the other hand, should await a decision to undertake the project. Otherwise, piecemeal appeals and adjudication of the legality of projects which never get off the drawing board will result. Different policies may lurk in identical language depending on the circumstances in which it is used, and we are perfectly free, not to say compelled, to go beyond literalism and look to differing functions and contexts in interpreting such language.
 
 
 24
 The circumstances in which agency actions involving environmental concerns and highway construction are reviewable cannot be spelled out in exact detail. The federal defendants urge that a review await the approval of plans, specifications and estimates for construction, the stage at which federal funds are finally and firmly committed. We do not adopt such a mechanical rule but instead rely on the "common sense" test called for in Environmental Defense Fund, Inc. v. Johnson, 629 F.2d at 241. Moreover, we decide only the case before us. The Secretary of Transportation has stated flatly that approval of land acquisition and construction relating to Sections I and II would not be granted unless and until a decision is made "to proceed with construction of I-84 in Rhode Island following preparation and approval of an (EIS)." The line drawn by the Secretary in this case is unambiguous as to the future events which must occur for the project to go forward. For the reasons stated above, judicial review should await either those events or modification of the Secretary's order.
 
 
 25
 The expenditure of funds on design work in the interim does not call for review under Section 10(c). The DOT argues that if a decision to build is ultimately made, a failure to have done preliminary design work might result in delay and future inflated costs. Plaintiffs understandably point out that if no decision to build is made, the expenditure will be wasted. We agree with Judge Cabranes, however, that the wisdom of this "gamble" is left to the DOT and that the design expenditures themselves are not sufficient final action to call for judicial review so long as the ban on land acquisition and construction is in effect.
 
 
 26
 Affirmed.
 
 
 
 *
 Of the United States District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 The DOT has, from time to time, promulgated regulations, contained in 23 C.F.R. Part 771, which implement NEPA. Newly amended regulations became effective on December 29, 1980. 45 Fed.Reg. 71968 (1980). However, the amended regulations stipulate, as the parties assume in their briefs, that the prior regulations govern the EIS's in this case. See 23 C.F.R. § 771.109(a)(4) (1981). As a result, "prior concurrence" as to Sections I and II is governed by 23 C.F.R. § 771.14(c) (1980) which reads:
 (c) The Regional Federal Highway Administrator shall submit to the FHWA Washington Headquarters Office (HEV-10) for prior concurrence four (4) copies of the (FEIS) prepared for highway sections in the following categories:
 (1) Highway sections on a new alignment in a metropolitan area of over 100,000 population. The metropolitan area is defined as the area designated for the purpose of section 134 transportation planning.
 (2) Any new controlled access freeway.
 (3) Highway sections to which a Federal, State or local governmental agency has expressed opposition on environmental grounds.
 (4) Highway sections for which the Federal Highway Administrator requests the Regional Administrator to send the (FEIS) to the Washington Headquarters Office for review either by the Assistant Secretary for Environment, Safety and Consumer Affairs or by the FHWA Headquarters Office.
 (5) Highway sections which would require a section 4(f) determination.
 
 
 [2]
 This action was undertaken pursuant to 40 C.F.R. Part 1504 (1981), which provides, in pertinent part:
 § 1504.1 Purpose.
 (a) This part establishes procedures for referring to the (CEQ) Federal interagency disagreements concerning proposed major Federal actions that might cause unsatisfactory environmental effects. It provides means for early resolution of such disagreements.
 (b) Under section 309 of the Clean Air Act (42 U.S.C. § 7609), the Administrator of the (EPA) is directed to review and comment publicly on the environmental impacts of Federal activities, including actions for which (EIS's) are prepared. If after this review the Administrator determines that the matter is 'unsatisfactory from the standpoint of public health or welfare or environmental quality,' section 309 directs that the matter be referred to the (CEQ) (hereafter 'environmental referrals').
 (c) Under section 102(2)(C) of the Act other Federal agencies may make similar reviews of (EIS's), including judgments on the acceptability of anticipated environmental impacts. These reviews must be made available to the President, the (CEQ) and the public.
 § 1504.2 Criteria for referral.
 Environmental referrals should be made to the (CEQ) only after concerted, timely (as early as possible in the process), but unsuccessful attempts to resolve differences with the lead agency. In determining what environmental objections to the matter are appropriate to refer to the (CEQ), an agency should weigh potential adverse environmental impacts, considering:
 (a) Possible violation of national environmental standards or policies.
 (b) Severity.
 (c) Geographical scope.
 (d) Duration.
 (e) Importance as precedents.
 (f) Availability of environmentally preferable alternatives.
 
 
 [3]
 23 C.F.R. § 771.5(e) (1980) reads:
 (e) For major actions the HA shall not proceed with the design of the proposed alternative (other than such design work necessary to make engineering and environmental decisions), right-of-way acquisition (other than bona fide hardship cases and protective buying), or construction until notified in writing by the FHWA that: (1) the negative declaration has been adopted, or (2) at least 90 days have elapsed since the (DEIS) was circulated for comment and furnished to CEQ, and at least 30 days have elapsed since the (FEIS) was made available to CEQ, commenting agencies and the public.