**Peggy Ravich ZAMORE**

v.

**James E. DYER, Individually and as Mayor of the City of Danbury, et al.**

**Civ. No. B82–389.**

United States District Court, D. Connecticut.

Oct. 1, 1984.

Thomas W. Bucci, Bridgeport, Conn., Arthur H. Goldsmith, Boston, Mass., for plaintiff.

Dion W. Moore, Bridgeport, Conn., Theodore H. Goldstein, Danbury, Conn., James J. Maher, Thomas M. Murtha, Bridgeport, Conn., for defendants.

## RULING ON PLAINTIFF'S MOTION FOR SUMMARY AND DECLARATORY JUDGMENT AND FOR REINSTATEMENT RELIEF

ELLEN B. BURNS, District Judge.

This civil action arises from the alleged wrongful termination of plaintiff as Community Health Educator for the City of Danbury. The plaintiff has moved for summary and declaratory judgment on her complaint of unlawful sex discrimination and denial of her due process rights. She requests reinstatement to her former posi-

tion or, alternatively, to be given an equivalent position. She has further asked for compensatory damages of $55,877 in back pay ($34,557 adjusted gross wages through August, 1983, and $1,640 per month thereafter) and an award of reasonable attorney's fees.

The action was brought pursuant to Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e–5(g), the Connecticut Human Rights Act, Conn.Gen.Stat. § 46a–60(a)(1) and (7)(D) and 42 U.S.C. § 1983, by virtue of alleged due process and equal protection violations. The plaintiff also alleged various tort and contract claims which are not subject to the motion for summary judgment. Plaintiff has represented that she would not pursue these state law claims for damages if successful on this motion.

The defendants are James E. Dyer, individually and as Mayor of the City of Danbury, Thomas F. Draper, individually and as Acting Director of Health for the City of Danbury, and The City of Danbury. Plaintiff has alleged the court's jurisdiction under 42 U.S.C. § 1983, 28 U.S.C. § 1343(3) and (4), and § 1331 as well as under 42 U.S.C. § 2000e *et seq.*, Title VII of the Civil Rights Act of 1964, as amended by The Equal Opportunities Act of 1972, and the doctrine of pendent jurisdiction.

Plaintiff's motion is granted in part and denied in part.

## A. *Statement of the Facts*

The following facts are set forth in plaintiff's affidavit and not disputed by any counter-affidavit of defendants:

Plaintiff Peggy Ravich Zamore, having passed a Civil Service examination, was hired in October, 1979, as the Community Health Educator for the City of Danbury. Prior to her employment in Danbury, Mrs. Zamore was awarded a B.A. degree in nutrition from Simmons College, Boston, Massachusetts, in 1973 and a Masters Degree in Public Health from the University of Michigan in 1975. In October, 1980, the plaintiff applied for a maternity leave, as provided for in the collective bargaining agreement between the City of Danbury and its employees. The Danbury Civil Service Commission denied the plaintiff's request for a year's leave, granting her instead a six-month maternity leave to commence December 1, 1980. On or about May 21, 1981, the plaintiff wrote to her supervisor, defendant Thomas Draper, Acting Director of Health for the City of Danbury, to inform him of her intention to return to her position on Monday, June 1. On Friday, May 29, 1981, around 5:00 p.m., defendant James Dyer, Mayor of Danbury, sent a letter by hand to the plaintiff informing her that her position had not been funded in the 1981–1982 budget and that he was immediately abolishing the position of Community Health Educator and terminating her services as an employee of the City of Danbury. Defendant Dyer did not offer plaintiff an equivalent position at that time.[1] Defendant Draper's role in the abolition of plaintiff's position is a matter that is factually disputed.

Plaintiff's termination took place less than one business day before she expected to return to work. At no time was the plaintiff given a hearing or an opportunity to challenge, inquire into, or contest her dismissal.

On or about July 6, 1981, plaintiff filed a complaint of sex discrimination with the

---

1. The defendants have suggested that they complied with the statutory requirement to offer plaintiff an equivalent position when her original job was discontinued. Defendant Draper's affidavit concerning this alleged compliance reveals no bona fide job offer was ever made to Mrs. Zamore. He stated "I contacted Mrs. Zamore by telephone on or about June 22, 1983, and invited her to apply for the position [of nutritionist]. A copy of the job description and qualifications for the Nutritionist position were subsequently forwarded to Mrs. Zamore." There can be no factual dispute that an invitation to apply for a possible job is not the same as the statutorily mandated placement in an equivalent position, especially since the job description was forwarded to the plaintiff more than three weeks after her abrupt discharge. Furthermore, the court notes that, based on the job description, in any event, the positions do not appear to be equivalent in their salary or levels of responsibility.

Connecticut Commission on Human Rights and Opportunities (CCHRO) charging the defendants with violating the Connecticut Human Rights statutes, in particular Conn. Gen.Stat. § 46a–60(a)(7)(D) which provides that

It shall be a discriminatory practice in violation of this section: ...

(7) For an employer, by himself or his agent: ...

(D) to fail or refuse to reinstate the employee to her original job or to an equivalent position with equivalent pay and accumulated seniority, retirement, fringe benefits and other service credits upon her signifying her intent to return [after a pregnancy leave] unless, in the case of a private employer, the employer's circumstances have so changed as to make it impossible or unreasonable to do so.

The state complaint was sent to and received by the federal Equal Employment Opportunity Commission (EEOC) which issued a right to sue letter on April 5, 1982. No further action was taken by either the state or federal agency.

Plaintiff's motion for summary judgment is addressed to Counts One and Four of her complaint.

## B. *Federal Law Claims*

### 1. *Title VII*

■ In Count One, plaintiff has alleged violation of her Title VII rights asserting that the defendants unlawfully discriminated against her on the basis of sex by refusing to reinstate her following a six-month maternity leave. The defendants allege as a special defense, allowable under Title VII [2] that Mrs. Zamore was terminated because of a loss of funding which required the abolition of her position. Plaintiff maintains the defense is pretextual. The Title VII dispute is, therefore, factual and cannot be resolved as a matter of law.

For this reason the court finds that plaintiff's Title VII claim is not suitable for resolution by way of a motion for summary judgment. *Adickes v. S.H. Kress Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); Fed.R.Civ.P. 56(c).

### 2. *Due Process*

■ In Count Four, the plaintiff has alleged violation of her due process rights as guaranteed by the Fourteenth Amendment and 42 U.S.C. § 1983, claiming entitlement to her position by virtue of the reinstatement provisions of Conn.Gen.Stat. § 46a–60(a)(7)(D).[3] Her due process claims are substantial. She was discharged without effective notice and without a hearing from a job in which she had a state-created property interest. Although plaintiff's property interest in continued employment after her maternity leave was granted by the provisions of Conn.Gen.Stat. § 46a–60(a)(7)(D), her right to minimum procedures before losing that property interest is a matter of federal law. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1981); *Vitek v. Jones*, 445 U.S. 480, 490–91, 100 S.Ct. 1254, 1262, 63 L.Ed.2d 552 (1980); *Arnett v. Kennedy*, 416 U.S. 134, 166–67, 94 S.Ct. 1633, 1650, 40 L.Ed.2d 15 (1974).

The Supreme Court observed in *Logan, supra:*

As our decisions have emphasized time and again, the Due Process Clause grants the aggrieved party the opportunity to present his case and have its merits fairly judged. Thus it has become a truism that 'some form of hearing' is required before the owner is finally deprived of a protected property interest. *Board of Regents v. Roth*, 408 U.S. 564, 570–71 n. 8 [92 S.Ct. 2701, 2705–06 n. 8, 33 L.Ed.2d 548] (emphasis in original) ... To put it as plainly as possible, the State may not finally destroy a property inter-

---

**2.** 29 C.F.R. § 1604.10(c)

**3.** Plaintiff also claims a property right in her job arising out of her status as a civil service employee entitled to protection under Chapter 113, Part 1, of Connecticut General Statutes Title 7 and Danbury Civil Service Commission Regulations (Complaint ¶ 42) which defendants have denied.

est without first giving the putative owner an opportunity to present his claim of entitlement.

*Logan v. Zimmerman Brush Co.*, 455 U.S. at 433–34, 102 S.Ct. at 1156.

■ In the instant case, plaintiff was given termination notice less than one business day before she was scheduled to return to work. She was never given a hearing. The court finds that, as a matter of law, the plaintiff was denied minimum due process. The motion for summary judgment on plaintiff's due process claim is therefore granted, except as to defendant Draper, whose role is disputed.

The problem confronting the court is what remedy can be granted to the plaintiff. To give her notice and a hearing years after termination appears to be inadequate. The Connecticut Supreme Court considered this question in *Adamchek v. Board of Education*, 174 Conn. 366, 387 A.2d 556 (1978), noting that:

> ... [A] court-ordered hearing held years after a plaintiff's employment was improperly terminated does not make good the wrong done. The wrong which such a plaintiff suffers is not merely the denial of a proper hearing—he also suffers the deprivation of his employment without procedural due process and in violation of the statute. '[W]here ... protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief.' *Bell v. Hood*, 327 U.S. 678, 684, 66 S.Ct. 773 [777] 90 L.Ed. 939. The proper relief for the present wrongs is to grant reinstatement. *See Coppolla v. Personnel Appeal Board*, 174 Conn. 271, 386 A.2d 228 (1978).

174 Conn. at 371, 387 A.2d 556. According to *Adamchek*, if the plaintiff were, in fact, wrongfully discharged without a hearing, she would be entitled to reinstatement. However, this court need not reach this question, for reinstatement is also proper under her state statutory cause of action.

## C. State Law Claim

### 1. Statutory Requirement of Reinstatement

In Count One plaintiff has also alleged violation of the state human rights act, specifically, Conn.Gen.Stat. § 46a–60(a)(1) and (7)(D).

■ Unlike Title VII, the Connecticut statute explicitly provides that a public employer must reinstate an employee to her original or an equivalent position following maternity leave, if one is granted. Conn. Gen.Stat. § 46a–60(a)(7)(D). Although the statute would allow a private employer to raise the "changed business circumstances" defense to a charge of unjust refusal to reinstate, that defense is not available to the defendants in the instant case. The plain meaning of the statute precludes the court from considering the merits of the defendants' claim of compelling financial reasons for its action in terminating Mrs. Zamore. The defendants' excuse may be raised and proven in the Title VII action, but the language of the Connecticut statute clearly indicates that an employee on maternity leave from her job with a public employer such as the City of Danbury must be reinstated in her original or an equivalent position. This the defendants admittedly refused to do. There is, therefore, no factual dispute concerning the violation of state law.

Defendants have urged the court to consider Connecticut case law which has held that the Connecticut Human Rights Act is co-extensive with Title VII as being dispositive of the instant case. *Wroblewski v. Lexington Gardens, Inc.*, 188 Conn. 44, 448 A.2d 801 (1982); *Board of Education v. Commission on Human Rights and Opportunities*, 176 Conn. 533, 409 A.2d 1013 (1979); *Pik-Kwik Stores, Inc. v. Commission on Human Rights & Opportunities*, 170 Conn. 327, 365 A.2d 1210 (1976). However, the cases cited dealt with those parts of Conn.Gen.Stat. § 46a–60 which do track the language of the federal law, although they may "differ slightly." *Pik-Kwik Stores, Inc. v. Commission on Hu-*

*man Rights & Opportunities,* 170 Conn. at 331, 365 A.2d 1210.

In the instant case, however, the plaintiff has alleged violation of Conn.Gen.Stat. § 46a–60(a)(7)(D), a provision that was not at issue in any of the cases cited by the defendants. Nor has that subsection been interpreted by the Connecticut courts. The exact protection afforded by subsection (a)(7)(D) does not appear in the federal act. An important distinction between the state and federal law on return from maternity leave is that the federal law and regulations would allow *any* employer to raise changed business circumstances as a legitimate reason for termination, but the Connecticut law restricts this defense to private employers.

█ The defendants' contention that the Connecticut statute cannot exceed the mandate of Title VII is erroneous. A state may grant its citizens greater protection than Congress has granted in Title VII, 42 U.S.C. § 2000e–7. *See also Huron Portland Cement Co. v. Detroit,* 362 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852 (1960) (absent preemption, states may impose stricter standards than do the federal statutes). The state statute on its face indicates that Connecticut has exercised this prerogative.[4]

It is clear from the facts as alleged by the parties that there has been a violation of Conn.Gen.Stat. § 46a–60(a)(7)(D), despite the fact that defendant Draper alleged and defendants Mayor Dyer and the City of Danbury have asserted belatedly in their memorandum of February 16, 1984, that an equivalent position was offered to the plaintiff. The facts as stated by the defendants themselves do not support their claim. The court finds, as a matter of law, that the plaintiff did not receive a firm offer of an equivalent position, *see,* note 1,

*supra,* nor was she reinstated in her original position.

### 2. *Agency Inaction*

A troublesome issue in the present case, raised by *none* of the parties, is whether the plaintiff's motion for relief based on the defendants' clear violation of the state Human Rights Act is suitable for judicial action. The court recognizes that Conn. Gen.Stat. § 46a–60 does not grant a private right of action such as that granted in Title VII or that granted in Conn.Gen.Stat. § 46a–98, the law forbidding sex discrimination in a determination to grant or withhold credit. Instead, the statute at issue provides only for an appeal from action or dismissal by the state agency charged with carrying out the mandate of the Act, the Connecticut Commission on Human Rights and Opportunities [CCHRO]. The problem that confronts this court is that the state agency has not acted. Thirty-eight months after filing her complaint, Peggy Zamore has yet to receive a ruling from the CCHRO.

The court must consider the effect of inaction and delay on the plaintiff. Courts have held that administrative inaction can be tantamount to dismissal or denial of a plaintiff's claim. *Houseton v. Nimmo,* 670 F.2d 1375 (9th Cir.1982); *Environmental Defense Fund v. Hardin,* 428 F.2d 1093, 1098–99 (D.C.Cir.1970); *see also* K. Davis, Administrative Law § 8.08 at 282 (June 1976 Supp.); L. Jaffe, Judicial Control of Administrative Action 346, 358–59 (1965); V. Schwartz, Administrative Law § 10.18 (1982). As Judge Bazelon observed in *Environmental Defense Fund v. Hardin, supra,*

... when administrative inaction has precisely the same impact on the rights of the parties as denial of relief, an agency

---

4. One federal district court in California has found that Title VII preempted a state statute mandating reinstatement from maternity leave. *California Savings and Loan Assoc. v. Guerra, et al,* No. 83–4927R (C.D.Cal. Mar. 19, 1984). This court finds that Title VII does not preempt state law. Indeed, the statute itself so states. 42 U.S.C. § 2000e–7. This is in direct contrast to

the Age Discrimination in Employment Act (ADEA) which explicitly states that "upon commencement of action under this chapter such action shall supersede any state action." 29 U.S.C. § 633(a). Therefore, any age discrimination decisions regarding preemption are inapposite.

cannot preclude judicial review by casting its decision in the form of inaction rather than in the form of an order denying relief.

428 F.2d 1099. *See also British Airways Board v. Port Authority of New York*, 564 F.2d 1002, 1010 (2d Cir.1977),

("The law simply will not tolerate the denial of rights by unwarranted official inaction.") ...

The Connecticut Supreme Court also has recognized that, in some cases, a plaintiff may seek judicial redress from agency inaction even though the ordinary statutory remedy is to appeal an explicitly adverse decision. *Blum v. Lisbon Leasing Corp.*, 173 Conn. 175, 282, 377 A.2d 280 (1977). The *Blum* court denied defendants' claims that plaintiff failed to exhaust administrative remedies and upheld the trial court's grant of injunctive relief in the face of inaction by the zoning board of the Town of Lisbon.

The attempt to define an appropriate judicial response to agency delay or inaction is also often couched in terms of "finality" or "ripeness." The Supreme Court considered these issues in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 137, 87 S.Ct. 1507, 1509, 18 L.Ed.2d 681 (1967). The Court noted that injunctive and declaratory judgment remedies are discretionary and must be used only when an issue is found to be "ripe" for adjudication, emphasizing that flexibility of approach was necessary to any determination of ripeness. *Id.* 387 U.S. at 148–50, 87 S.Ct. at 1515–16; *accord Toilet Goods Assoc., Inc. v. Gardner*, 387 U.S. 158, 162, 87 S.Ct. 1520, 1523, 18 L.Ed.2d 697 (1967).

To aid courts in determining whether a case is fit for judicial action, the *Abbott* court suggested a test calling for (1) concrete issues sufficiently defined so that the court does not get entangled in "abstract disagreements over administrative policies"; (2) "a purely legal" issue requiring only statutory interpretation and application; and (3) a determination that the judicial action requested will not interfere with an ongoing administrative process. *Id.* 387

U.S. at 148–49, 87 S.Ct. at 1515. Once these criteria for fitness are found, a court, according to *Abbott*, must evaluate the harm to the petitioner of withholding judicial review. *Id.* at 149, 87 S.Ct. at 1515.

The Second Circuit has applied the *Abbott* standards, and has emphasized the Court's admonition to be flexible and pragmatic in making a determination of ripeness or finality. "The law of ripeness is now very much a matter of common sense, ... whether one speaks in the related terms of 'ripeness,' of satisfying the 'final agency action' requirement ... or of the exhaustion requirement...." (citations omitted). *Seafarers International Union of North America, AFL–CIO v. United States Coast Guard, et al*, 736 F.2d 19, 26 (2d Cir.1984) (finding plaintiff's claim did not meet *Abbott* test). *See also Nat'l Wildlife Federation v. Goldschmidt*, 677 F.2d 259, 263 (2d Cir.1982); *Nat'l Resources Defense Council v. U.S. Nuclear Regulatory Comm.*, 539 F.2d 824, 837 (2d Cir.1976); *Greene County Planning Board v. Federal Power Comm.*, 455 F.2d 412, 425 (2d Cir.) *cert. denied* 409 U.S. 849, 93 S.Ct. 56, 34 L.Ed.2d 90 (1972).

The instant case appears to fall squarely within the *Abbott* guidelines. The issue between Peggy Zamore and the defendants is sharply defined. By exercising judicial authority over this case there is no possibility that the court will become enmeshed in "abstract disagreements over administrative policies" *that* Abbott cautioned against. The statute in question simply leaves no room for discretion on the part of the CCHRO. Furthermore, the question in this case is a purely legal one, calling only for an interpretation and application of Conn.Gen.Stat. § 46a–60(a)(7)(D). The administrative process has "been exhausted at least to the extent that an adequate factual record has been established." *Seafarers, supra*, 736 F.2d at 26. Finally, the judicial action requested will not interfere with an ongoing administrative process. If there were any indication whatsoever of agency activity, this court would hesitate to intervene even though the plaintiff's

complaint has been long delayed.[5] The responsible agency, the CCHRO, however, apparently has taken no action on the plaintiff's complaint in over three years.

Having satisfied the *Abbott* criteria of fitness for judicial review, it remains for the court to evaluate the harm to the plaintiff of withholding judicial action. Peggy Zamore's wrongful discharge and her prayer for reinstatement appear again to satisfy the *Abbott* requirements. The injury is great and continuing. Delay inflicts further harm on the plaintiff. The administrative solution has failed to address Peggy Zamore's injury. Common sense suggests that this issue should be resolved, and a judicial resolution reached.

■ Because of the foregoing, the court finds that, in the instant case, the inaction of the CCHRO is tantamount to final dismissal and hence suitable for judicial review as if on appeal.

The Connecticut Supreme Court has defined the scope of judicial review of an agency decision under Conn.Gen.Stat. § 46a–60.

> The scope of judicial review in an appeal from an administrative agency such as the defendant commission is limited by § 4–183(g) [the Connecticut Administrative Procedures Act] which provides, in part, that '[t]he court may reverse or modify the decision [of the administrative agency] if substantial rights of the appellant have been prejudiced because the ... conclusions, or decisions are ... affected by ... error of law.'

*Pik-Kwik Stores, Inc. v. Commission on Human Rights & Opportunities,* 170 Conn. at 330, 365 A.2d 1210. According to *Pik-Kwik,* a court may reverse or modify the decision of the CCHRO if substantial rights of the appellant have been prejudiced and if the ruling were based on a determination of law rather than of fact. The plaintiff's discharge despite the clear mandate of Conn.Gen.Stat. § 46a–60(a)(7)(D) and the subsequent inaction of the CCHRO fulfills these requirements.

### 3. Jurisdiction

Having determined that the state statute was violated, it remains for the court to examine the jurisdictional doctrines that might counsel against this court's exercise of jurisdiction.

■ Although the exercise of pendent jurisdiction is ultimately discretionary, there are policy considerations and legal guidelines which the court must weigh before deciding to exercise jurisdiction over this state law claim. The plaintiff must have a cause of action arising under federal law as well as the separate state law claim. *Hurn v. Oursler,* 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933); *J.I. Case Co. v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). Both causes of action must derive from a common nucleus of operative fact. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The federal claims must be serious and viable. *Pennhurst State School v. Halderman,* —— U.S. ——, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Finally, judicial economy and an equitable con-

---

**5.** The potential for improper judicial interference in an ongoing administrative proceeding persuaded District Judge Jose Cabranes and subsequently the Second Circuit Court of Appeals that the *Abbott* test precluded judicial action in *National Wildlife Federation v. Goldschmidt,* 504 F.Supp. 314 (D.Conn.1980), 519 F.Supp. 523 (D.Conn.1981), *aff'd.* 677 F.2d 259 (2d Cir.1982). In *National Wildlife,* the plaintiffs sought relief from actions of the Federal Department of Transportation and from the Connecticut Department of Transportation in connection with the environmental impact of construction of an interstate highway connector. Judge Cabranes ruled that the *Abbott* test

was not satisfied because the agencies in question were still considering the issue.

Furthermore, this court might also choose not to intervene if it had the power instead to issue a mandamus to the CCHRO to decide plaintiff's case. Because the CCHRO is a state agency, however, orders to comply with state procedures may not be issued by a federal court. *Pennhurst State School v. Halderman,* —— U.S. ——, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). As mandamus is not possible and the agency apparently is no longer considering plaintiff's complaint, this element of *Abbott* is satisfied in the instant case.

cern for the ability of the plaintiff to maintain separate federal and state actions must outweigh fears of possible federal intervention into uncertain areas of state law.

■ In the instant case, the plaintiff's federal and state claims arise from the identical incident. Her federal claims, both statutory and constitutional, are viable. Although her federal claim under Title VII allows concurrent jurisdiction in federal and state court, the plaintiff has exercised her right to bring her action in federal court. The Title VII claim is substantial, although it cannot be resolved at this juncture due to factual disputes. The constitutional due process claim, as stated above, has already been decided in favor of the plaintiff. Thus, the plaintiff is in federal court legitimately with significant federal claims. Finally, it is far more efficient to resolve all plaintiff's legal claims arising from her discharge in one court action. And, because the state statute is unambiguous, resolution of plaintiff's state law claim in federal court is not overly intrusive.

In *Pandis v. Sikorsky Aircraft*, 431 F.Supp. 793 (D.Conn.1977), Judge Newman declined to exercise pendent jurisdiction over and dismissed a state law claim when the case was properly in federal court on an ADEA claim. However, Judge Newman had found that (1) ADEA preempted the state age discrimination act and (2) the state claim was still in the administrative process and hence not yet ripe. In this case, unlike *Pandis*, there is no preemption of the state maternity leave provisions by Title VII. Instead the state has given additional protection to the plaintiff, and the constructive dismissal by the CCHRO has made this case ripe for judicial intervention. Given these differences, this court finds it appropriate in this case to exercise pendent jurisdiction over the state law claim.

■ Nor does the doctrine of abstention prevent the court from exercising its jurisdiction. The rule of *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), requires a federal court to abstain if a federal constitutional claim is presented along with a state law claim that may be dispositive. In theory, the federal court should then let a state court decide the state law question in an effort to avoid the federal constitutional decision. However, *Pullman* abstention "will not be ordered if the state law is clear on its face ... or if the constitutional issue would not be avoided or changed no matter how the statute is construed." C. Wright, The Law of Federal Courts, § 52, at 304 (4th ed. 1983). This court has already concluded that the state statute is clear on its face. Further, the constitutional issue is a due process violation based on the denial of a hearing, while the statutory claim is denial of a job following maternity leave. The two substantive claims are, therefore, distinct. The constitutional issue in this case is in no way affected and would not be avoided by the state law decision. Thus, *Pullman* abstention is not warranted.

D. CONCLUSION

Accordingly, plaintiff's motion for summary judgment against all defendants on her Title VII claim is denied because of material factual disputes. Summary judgment is granted in favor of plaintiff on her due process claim, Count Four, against defendants Dyer, in his official capacity and the City of Danbury, but not against defendant Draper as there are factual disputes regarding his involvement in the decision to abolish plaintiff's position and to terminate her. No remedy need be fashioned for this violation, however, because summary judgment is granted for plaintiff on that portion of Count One alleging a state statutory cause of action, again against Dyer and the City of Danbury, and such a violation carries with it the right to reinstatement and back pay.

■ The City of Danbury is ordered to reinstate Peggy Ravich Zamore to her former or an equivalent position. She is awarded $55,877 in back pay for the time she was unemployed, excluding six months

when she had her second child, and reasonable attorney's fees under 42 U.S.C. § 1988, for which her counsel should file an accounting of hours spent and an hourly rate, within 30 days of the date of this decision. Judgment is entered and effective as of the date of this decision, with the attorney's fee issue to be treated separately as a collateral matter.

SO ORDERED.