510 A.2d 931

California Car Wash of Allentown, Inc. and Texaco, Inc., Appellants *v.* Zoning Hearing Board of Whitehall Township, Appellee.

Argued May 15, 1986, before Judges MACPHAIL and COLINS, and Senior Judge ROGERS, sitting as a panel of three.

*Mark Malkames,* with him, *William G. Malkames,* for appellants.

*Joseph A. Fitzpatrick, Jr., Fitzpatrick & Associates,* for appellee.

OPINION BY SENIOR JUDGE ROGERS, June 16, 1986:

California Car Wash of Allentown, Inc. (landowner) and Texaco, Inc., applicants, have appealed from an order of the Court of Common Pleas of Lehigh County affirming the decision of the Zoning Hearing Board of Whitehall Township (Board) that the applicants' application for "authorization of the continuation, change, and expansion of a nonconforming use from a service station to a service station with a food mart" should be denied because the nonconforming use had been abandoned.

The landowner owns a lot with frontage on two public roads in Whitehall Township, located in the C-1 Neighborhood Commercial Zones district in which an

automobile service and repair station is a permitted use. The landowner's use of the gasoline service station is nonconforming solely because the service station does not conform to Section 1311(d) of the Whitehall Township Zoning Ordinance which provides that an automotive service station shall not "be located nearer or closer than twenty-five hundred . . . feet to any other automotive service station measured on a direct line"; there is another station less than 2,500 feet distant.

The landowner's application to the Board was made on December 15, 1983. The landowner requested to continue, change, and expand its nonconforming use and, in addition, applied for variances from certain setback and sign requirements in connection with its proposal to raze existing buildings and construct a retail store and gasoline dispensing facilities.

After two hearings, the Board issued its decision. The undisputed facts, all of which are the subject of the Board's findings, are as follows. When the landowner acquired title to the lot in 1977, the land was leased to the Exxon Corporation as a service station selling gasoline to the public. While Exxon used part of the lot for the sale of gasoline, the landowner used another part of the lot to service, repair, and change the oil of foreign cars. Exxon terminated the lease in September, 1982. After September 1982, the landowner continued its foreign car service business. It sold gasoline to persons whose foreign cars were being serviced and to persons who rented trucks from a Ryder Truck rental franchise also located on the lot. The landowner discontinued selling any gasoline about April 10, 1983. The pump island which had been used by Exxon remained in place although only one nonoperational pump remains. The underground storage tanks for gasoline are still in place, the electric service lines for the pump island have been disconnected, and the foreign car repair operation

stopped doing business on the lot in September or October of 1983.

The facts also show that an agreement between Texaco and the landowner was signed on October 12, 1983, for Texaco's lease of the subject property, negotiations for which had commenced in February, 1983; that Texaco installed a gasoline pump on the lot on November 2, 1983; and that a Texaco sign, covered with a black shroud, has been in place on the lot since October, 1983.

The Board concluded that the landowner had used the subject property for a purpose other than a gasoline service station, that " 'selective basis' sales of gasoline do not constitute the ongoing operation of a service station, and that therefore, the sale of gasoline from the subject premises has been abandoned and discontinued for a period in excess of one year."[1]

The only question presently before us is that of whether the landowner's activities constitute an abandonment of the landowner's nonconforming use of the property.

The burden of proving abandonment of a nonconforming use is on the party so asserting who must prove that the owner or occupier of the land intended to aban-

---

[1] This is in reference to Section 1301.1 of the Whitehall Township Zoning Ordinance which pertinently provides that the nonuse of a nonconforming use or building for a period of one (1) year or more shall be deemed an abandonment.

This section has no application here because, as we later see, there was never a discontinuance of the use of a gasoline service station as defined in the ordinance. Even if the facts warranted the application of Section 1301.1, it would create only a presumption of abandonment which would be overcome by proof of the intention to continue the use. As we also see, the negotiations with Texaco for a new sales outlet began only six months after Exxon left. *See Smith v. Board of Zoning Appeals of the City of Scranton,* 74 Pa. Commonwealth Ct. 405, 459 A.2d 1350 (1983).

don the use and that the use was, consonant with this intention, actually abandoned. We stated in *Smith v. Board of Zoning Appeals of the City of Scranton*, 74 Pa. Commonwealth Ct. 405, 407-408, 459 A.2d 1350, 1352 (1983), that:

> [w]hile non-use or discontinuance of the use might be probative with respect to the second issue—actual abandonment—the intent to abandon could not be inferred from or established by a period of non-use alone. . . . Rather, the intent to abandon must be shown by the owner or occupier's overt acts or failure to act, such as written or oral statements evincing an intent to abandon the use, structural alterations to the building inconsistent with continuance of the nonconforming use, or the failure to take some step such as license renewal necessary to the continuance of the use. . . . (Citations omitted.)

Moreover, a showing of actual abandonment by a landowner is not proved by a mere temporary discontinuance of the business. *Id.*

The position of the landowner is that the evidence shows an ongoing operation of a gasoline service station within the meaning of the ordinance. Section 301(38) of the Whitehall Township Zoning Ordinance defines "gasoline service station" as follows:

> 38. Gasoline Service Station. A structure or premises where a flammable is stored, housed or sold for supply to motor vehicles. Used for the repair of motor vehicles in which gasoline and similar products may be dispensed for the servicing of such vehicles, excluding auto body repair.
>
> (a) Wherever it appears in the Codified Ordinances, the term 'Service Station or Automotive Service Station' shall be read and defined as 'Gasoline Service Station.'

The evidence shows that Exxon stopped selling gasoline and left in September 1982; that the landowner sold gasoline until April, 1983; that it continued to use part of its lot to service and repair foreign cars including the changing of oil and their repair until September or October 1983; that in February, 1983, the landowner began negotiations with Texaco for the lease for a public gasoline station; that in October, 1983, the parties signed an agreement of lease; and that in November, 1983, Texaco installed a pump on the lot. This evidence demonstrates neither actual abandonment nor the intention to abandon the use of the lot for a gasoline service station within the definition of the ordinance. In *Kuhl v. Zoning Hearing Board of Green Township,* 52 Pa. Commonwealth Ct. 249, 254, 415 A.2d 954, 957 (1980), we wrote in support of a conclusion that the landowner's activities in that case did not amount to actual abandonment:

> [R]emoving and replacing equipment, and again removing it, is no more a hallmark of cessation of use than would be, for example, the remodeling of a grocery store temporarily closed for that purpose. . . . The departure of a lessee, and the occurrence of an interval until another occupancy commences is not an abandonment.

We reverse the orders of the Court of Common Pleas and of the Zoning Hearing Board. We remand the record to the Board for consideration of the applicants' request for dimensional variances which the Board did not address. Jurisdiction is relinquished.

ORDER

AND NOW, this 16th day of June, 1986, the order of the Court of Common Pleas of Lehigh County in the above-captioned matter is reversed; we remand the record to the Zoning Hearing Board of Whitehall Township

for consideration of the applicants' request for dimensional variances which the Board did not address. Jurisdiction is relinquished.