Essex Leasing, Inc. *v.* Zoning Board of Appeals
of the Town of Essex et al.
(13128)

Peters, C. J., Healey, Shea, Callahan and Covello, Js.

Argued February 2—decision released March 22, 1988

*Timothy S. Hollister,* with whom were *Ann D. Dexter* and, on the brief, *Eric Luckingbeal,* for the appellant (plaintiff).

*Peter M. Sipples,* with whom was *Jack E. Rutigliano,* for the appellees (named defendant et al.).

*Thomas P. Byrne,* for the appellees (defendant Edwin L. Russell et al.).

PETERS, C. J. The principal issue in this case is whether a municipality is authorized to enact a zoning regulation that terminates a nonconforming use solely as a result of nonuse for a specified period of time without regard to the intent of a property owner to relinquish that use. The plaintiff, Essex Leasing, Inc., appealed from the decision of the named defendant,[1] the Essex zoning board of appeals, terminating its nonconforming use irrespective of intent. In sustaining the appeal, the trial court interpreted the Essex zoning regulations to require a showing of intent to relinquish a nonconforming use. The Appellate Court reversed, concluding that the regulations make it possible to abate a nonconforming use for nonuse alone. *Essex Leasing, Inc.* v. *Zoning Board of Appeals,* 9 Conn. App. 391, 518 A.2d 970 (1986). We affirm the judgment of the Appellate Court.

The relevant facts are undisputed. In early 1983, the plaintiff began to explore the feasibility of purchasing a building in Essex. A portion of the building, which is situated in a residential zone, is a legal nonconforming commercial use. The building had been leased to a commercial tenant by the plaintiff's immediate predecessors in title for a period of three years commencing November 1, 1980. In 1981, the tenant ceased

---

[1] The trial court permitted Edwin L. Russell and Alicia Z. Russell, abutting landowners, to intervene as defendants. Because the defendants have filed a consolidated brief, they will be treated jointly.

actual operation of its business on the premises. Unable to find a suitable subtenant, the tenant continued to pay rent and to maintain the premises with heat, utilities and office furnishings until March, 1983. The plaintiff, on March 28, 1983, in conjunction with its impending purchase of the property, filed an application for a permit to continue its nonconforming use of the building in its leasing business. The plaintiff acquired title to the property on May 2, 1983.

The Essex zoning enforcement officer denied the plaintiff's application for a zoning permit for two related reasons. He determined that the proposed use would constitute a change from one nonconforming use to another, in violation of § 50C.1 of the Essex zoning regulations. Further, he found that the property had not been in use for the period of one year and that therefore, in accordance with § 50E of the Essex zoning regulations, its nonconforming use had been terminated and could not be resumed. The latter regulation provides, in relevant part, that no nonconforming use may be resumed "[i]f such use or characteristic has not existed for a period of one year from the date of cessation . . . ." Essex Zoning Regulations § 50E.1. Upon the plaintiff's appeal to the zoning board of appeals (board), that board upheld the decision of the officer on the sole ground that the "subject property was not in use as intended in the Essex Zoning Regulations [§] 50E.1."

The plaintiff appealed to the Superior Court, claiming that the zoning decision was in error because: (1) the board had no authority under the zoning enabling act; General Statutes § 8-2; to terminate a nonconforming use solely on the basis of nonuse; (2) the board had misconstrued § 50E.1, as requiring no showing of intent to discontinue a nonconforming use; and (3) the record was factually insufficient to support the board's finding that a one year period of nonuse had occurred.

The trial court ruled only on the plaintiff's second ground for appeal. It held that the term "cessation" in § 50E.1, in its ordinary meaning, was synonymous with "discontinuance," a term that has been interpreted to require a showing of intent. See *Dubitzky* v. *Liquor Control Commission*, 160 Conn. 120, 123, 273 A.2d 876 (1970). Since the board concededly had not considered intent in its deliberations, the trial court sustained the plaintiff's appeal.

The defendants then sought further review by the Appellate Court, which, after granting certification, concluded that the trial court's construction of § 50E.1 was erroneous. Holding that the general statutes permit local zoning regulations to premise the termination of a nonconforming use solely upon a period of nonuse, the court determined that the town of Essex had adopted such a regulation. The court based its conclusion upon a close reading of the text of the applicable regulations; *Essex Leasing, Inc.* v. *Zoning Board of Appeals,* supra, 393–95; and upon the long-standing policy of this state to abolish or to reduce nonconforming uses as quickly as justice will permit. Id., 395. Because the trial court had not reached the factual issue of whether a one year period of nonuse had occurred, the Appellate Court remanded the case for further trial court proceedings to resolve that question.

This court thereafter granted the plaintiff's petition for certification on the following limited issue: "May a town validly enact zoning regulations which provide for the abatement of a nonconforming use as a result of nonuse for a specified period of time, without regard to the property owner's intent to maintain that use?" In order to resolve that issue properly, we must, however, first decide whether § 50E.1 of the Essex zoning regulations, as drafted, terminates a nonconforming use without a showing of intent. Without a threshold determination that intent is superfluous under the regu-

lation, we might well not reach the ultimate question of law because its resolution would not dictate the outcome of the case. Cf. *Ozyck* v. *D'Atri,* 206 Conn. 473, 479, 538 A.2d 697 (1988); *State* v. *Shashaty,* 205 Conn. 39, 50, 529 A.2d 1308 (1987), cert. denied,    U.S.   , 108 S. Ct. 753, 98 L. Ed. 2d 766 (1988); *Wu* v. *Fairfield,* 204 Conn. 435, 441, 528 A.2d 364 (1987).

## I

Our determination of the proper construction of the Essex zoning regulations must start with a review of the reasons advanced by the Appellate Court for deciding that "cessation" of a nonconforming use under § 50E.1 extinguishes such a use regardless of intent. In an appeal following certification, "the focus of our review is not the actions of the trial court, but the actions of the Appellate Court. We do not hear the appeal de novo." *State* v. *Torrence,* 196 Conn. 430, 433, 493 A.2d 865 (1985); *Fidelity Trust Co.* v. *Irick,* 206 Conn. 484, 487, 538 A.2d 1027 (1988); *Shelby Mutual Ins. Co.* v. *Della Ghelfa,* 200 Conn. 630, 634, 513 A.2d 52 (1986).

The Appellate Court undertook a careful analysis of § 50E in all its relevant parts. In its entirety, that regulation states: "50E. TERMINATION. Except as provided in §50F., no use of any land or improvement having a non-conforming characteristic and no non-conforming use or characteristic of land or improvement shall be resumed or restored:

"50E.1. CESSATION. If such use or characteristic has not existed for a period of one year from the date of cessation or from the effective date of the applicable regulation, whichever is later; or

"50E.2. ABANDONMENT. If it is abandoned.

"[U]nless such use conforms to these Regulations or such use or characteristic has previously been autho-

rized by the grant by the Zoning Board of Appeals of a variance varying the application of the pertinent regulations." Principally, the Appellate Court concluded that § 50E.1 could not be construed to include an intent requirement without rendering § 50E.2 superfluous. In zoning law, "abandonment" has normally been understood to require an intent permanently to cease the nonconforming use. See *Magnano* v. *Zoning Board of Appeals,* 188 Conn. 225, 228, 449 A.2d 148 (1982); *Dubitzky* v. *Liquor Control Commission,* supra, 123. Because § 50E.2 authorizes termination, once there has been an intent to discontinue the nonconforming use, without regard to any particular period of nonuse, it is illogical to interpolate an intent requirement into § 50E.1. *Essex Leasing, Inc.* v. *Zoning Board of Appeals,* supra, 394.

In addition, the Appellate Court discussed the inference to be drawn from the fact that § 50E.1 makes nonuse for "a period of one year . . . from the effective date of the applicable regulation" a separate ground for abating a nonconforming use. That clause in § 50E.1 addresses the possibility of an amendment to the town zoning regulations that would make a parcel of then nonused property nonconforming, and directs that the nonconforming use will be extinguished by dint of the passage of the specified period of time, without regard to intent. The Appellate Court could find no justification for requiring intent when there was a period of nonuse of one year because of a *prior* nonconformity and not requiring intent when the same period of nonuse followed a *new* nonconformity. Id., 394–95.

The plaintiff urges us, for two reasons, to reverse the ruling of the Appellate Court and to hold that intent continues to be a viable component of the termination of a nonconforming use under § 50E.1. It maintains that: (1) in its ordinary definition, the term "cessation"

is synonymous with "discontinuance," and therefore requires proof of intent; and (2) nonuse for a one year period creates only a presumption of relinquishment, which an owner should be permitted to overcome with appropriate proof of intent to maintain the use. We find neither contention persuasive.

Like the Appellate Court, we conclude that the term "cessation" does not, in and of itself, interpose an intent standard into the regulation. In construing a zoning regulation, it is our primary goal to ascertain and give effect to the intent of the local legislative body as expressed in the regulation as a whole. *Talarico* v. *Conkling,* 168 Conn. 194, 198, 362 A.2d 862 (1975); *McCrann* v. *Town Plan & Zoning Commission,* 161 Conn. 65, 73, 282 A.2d 900 (1971); *Lawrence* v. *Zoning Board of Appeals,* 158 Conn. 509, 511, 264 A.2d 552 (1969). "It is a standard rule of construction that, 'whenever feasible, the language of an ordinance will be construed so that no clause is held superfluous, void or insignificant.' " *Melody* v. *Zoning Board of Appeals,* 158 Conn. 516, 521, 264 A.2d 572 (1969). Taken as a whole, § 50E evinces a clear design for the termination of nonconforming uses by two distinct and independent means. Since § 50E.2 extinguishes nonconforming uses that have been abandoned intentionally, § 50E.1, in order to avoid superfluity, must be interpreted as having adopted a different standard, the passage of time. In the service of flexibility in attaining the goal of diminishing nonconforming uses " ' "as quickly as the fair interest of the parties will permit" ' "; *Weyls* v. *Zoning Board of Appeals,* 161 Conn. 516, 520, 290 A.2d 350 (1971); the town of Essex has adopted a bifurcated system that provides for the co-existence of a traditional standard of abandonment and an alternate standard of nonuse for a stated period of time. In context, the term "cessation" in the Essex zoning regulations

does not include a requirement of intent.[2] For a similar interpretation of a bifurcated system, see *Bartlett v. Board of Appeals,* 23 Mass. App. 664, 670, 505 N.E. 2d 193 (1987).

Failing on its principal argument, the plaintiff's secondary position is that § 50E.1 should be interpreted to create no more than a rebuttable presumption of relinquishment of a nonconforming use. The plaintiff concedes that nothing in the text of § 50E.1 expressly creates such a presumption. It relies instead upon the proposition, established in some other jurisdictions, that such a presumption must be implied to save the regulation from the constitutional jeopardy that attaches to arbitrary deprivations of property. See *Minot* v. *Fisher,* 212 N.W.2d 837, 841 (N.D. 1973); *California Car Wash, Inc.* v. *Zoning Hearing Board,* 98 Pa. Commw. 209, 510 A.2d 931, 933 n.1 (1986). These cases are not directly on point because they purport to interpret terminology that has traditionally been associated with the requirement of owner intent. One deals with regulations that employ a "discontinuance" standard; *Minot* v. *Fisher,* supra, 839; while the other construes a regulation that uses an "abandonment" standard. *California Car Wash, Inc.* v. *Zoning Hearing Board,* supra. By contrast, the use of "cessation" in the Essex zoning regulations manifests an intent to employ a different standard. In these circumstances, to interpose a presumption into § 50E.1 would be contrary to the established rule that " '[w]here the language of the [regulation] is clear and unambiguous, the courts cannot, by construction, read into [regulations] provisions

---

[2] We note that Essex has tempered the potentially harsh dictate of § 50E.1 of the Essex zoning regulations by providing in a latter regulation that "[a] non-conforming use or characteristic of an improvement which is damaged or destroyed by fire or other casualty to any extent may be restored or resumed" subject to certain restrictions. See Essex Zoning Regulations § 50F. We have no occasion in this appeal to interpret the breadth or scope of this exemption.

which are not clearly stated.' " *Harlow* v. *Planning & Zoning Commission,* 194 Conn. 187, 193, 479 A.2d 808 (1984). Accordingly, we hold that the term "cessation" as used in § 50E.1 of the Essex zoning regulations allows the termination of a nonconforming use after a specified period of nonuse without regard to owner intent.

## II

We turn now to the plaintiff's claim that Essex exceeded its authority under the zoning enabling act by enacting § 50E.1 of its zoning regulations. This claim is purely one of statutory dimension. Although the plaintiff asserts in its brief that enforcement of § 50E.1 results in a taking of property without just compensation, this alleged constitutional infirmity was not "distinctly raised at trial" as required by Practice Book § 4185. *Holbrook* v. *Casazza,* 204 Conn. 336, 354, 528 A.2d 774 (1987), cert. denied,     U.S.    , 108 S. Ct. 699, 98 L. Ed. 2d 651 (1988); *Farrell* v. *St. Vincent's Hospital,* 203 Conn. 554, 567–70, 525 A.2d 954 (1987); *Jefferson Garden Associates* v. *Greene,* 202 Conn. 128, 140, 520 A.2d 173 (1987). Furthermore, the plaintiff's analysis of this claim, only one paragraph in length, is not sufficiently detailed so as to facilitate the "study and reflection" ordinarily required for constitutional adjudication. *Scheyd* v. *Bezrucik,* 205 Conn. 495, 505, 535 A.2d 793 (1987). Instead, its claim comes to us as a sidelight to its primary allegation of statutory error. Under these circumstances, we conclude that the plaintiff has not preserved a constitutional claim for our review at this juncture.

Our statutory analysis begins with the settled rule that the town of Essex and its agency, the zoning board of appeals, may "exercise only such powers as are expressly granted to [the town], or such powers as are necessary to enable it to discharge the duties and carry

into effect the objects and purposes of its creation." *Baker* v. *Norwalk*, 152 Conn. 312, 314, 206 A.2d 428 (1965); *Arnold Bernhard & Co.* v. *Planning & Zoning Commission*, 194 Conn. 152, 159, 479 A.2d 801 (1984); *Board of Police Commissioners* v. *White*, 171 Conn. 553, 559, 370 A.2d 1070 (1976); *James J. F. Loughlin Agency, Inc.* v. *West Hartford*, 166 Conn. 305, 307, 348 A.2d 675 (1974). The zoning enabling act "delegates broad authority to municipalities to enact local zoning regulations." *Arnold Bernhard & Co.* v. *Planning & Zoning Commission,* supra

On its face, General Statutes § 8-2[3] expressly authorizes a municipality to regulate the "density of population and the location and use of buildings, structures and land for trade, industry, residence or other pur-

---

[3] "[General Statutes] Sec. 8-2. REGULATIONS. The zoning commission of each city, town or borough is authorized to regulate, within the limits of such municipality, the height, number of stories and size of buildings and other structures; the percentage of the area of the lot that may be occupied; the size of yards, courts and other open spaces; the density of population and the location and use of buildings, structures and land for trade, industry, residence or other purposes, and the height, size and location of advertising signs and billboards. Such zoning commission may divide the municipality into districts of such number, shape and area as may be best suited to carry out the purposes of this chapter; and, within such districts, it may regulate the erection, construction, reconstruction, alteration or use of buildings or structures and the use of land. All such regulations shall be uniform for each class or kind of buildings, structures or use of land throughout each district, but the regulations in one district may differ from those in another district, and may provide that certain classes or kinds of buildings, structures or uses of land are permitted only after obtaining a special permit or special exception from a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, whichever commission or board the regulations may, notwithstanding any special act to the contrary, designate, subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values. Such regulations shall be made in accordance with a comprehensive plan and shall be designed to lessen congestion in the streets; to secure safety from fire, panic, flood and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population and to facilitate the adequate provision for transpor-

poses." See *Kallay's, Inc.* v. *Katona*, 152 Conn. 546, 548–49, 209 A.2d 185 (1965). With respect to nonconforming uses, however, this broad grant of power is limited by the penultimate sentence in § 8-2: "Such regulations shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations." The plaintiff argues that this limitation prohibits Essex from extinguishing nonconforming uses without regard to owner intent. We disagree.

The plaintiff's principal argument for the proposition that § 8-2 does not permit a town to abate a nonconforming use without proof of intent to abandon is that this court has consistently so held. Relying on our precedents interpreting regulations concerning abandon-

tation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality. Such regulations shall also encourage the development of housing opportunities for all citizens of the municipality consistent with soil types, terrain and infrastructure capacity. Zoning regulations may be made with reasonable consideration for the protection of historic factors and shall be made with reasonable consideration for the protection of existing and potential public surface and ground drinking water supplies. On and after July 1, 1985, the regulations shall provide that proper provision be made for soil erosion and sediment control pursuant to section 22a-329. Such regulations may also encourage energy-efficient patterns of development, the use of solar and other renewable forms of energy, and energy conservation. The regulations may also provide for incentives for developers who use passive solar energy techniques, as defined in subsection (b) of section 8-25, in planning a residential subdivision development. The incentives may include, but not be limited to, cluster development, higher density development and performance standards for roads, sidewalks and underground facilities in the subdivision. Such regulations shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations. Any city, town or borough which adopts the provisions of this chapter may, by vote of its legislative body, exempt municipal property from the regulations prescribed by the zoning commission of such city, town or borough; but unless it is so voted municipal property shall be subject to such regulations."

ment or discontinuance of a nonconforming use to require proof of intent; *Point O' Woods Assn., Inc.* v. *Zoning Boards of Appeals,* 178 Conn. 364, 369, 423 A.2d 90 (1979); *Blum* v. *Lisbon Leasing Corporation,* 173 Conn. 175, 181–82, 377 A.2d 280 (1977); *State ex rel. Eramo* v. *Payne,* 127 Conn. 239, 241, 16 A.2d 286 (1940); the plaintiff infers that intent is a mandated element under the scheme devised by Essex for the abatement of nonconforming uses. Such an inquiry into intent is further justified, according to the plaintiff, by a policy against the arbitrary termination of property rights.

We are not persuaded that our prior cases stand for the principle urged by the plaintiff. We have twice suggested, albeit in dicta, that municipalities are authorized to terminate nonconforming uses solely on the ground of nonuse for a specified period. *Magnano* v. *Zoning Board of Appeals,* 188 Conn. 225, 228, 449 A.2d 148 (1982); *State ex rel. Eramo* v. *Payne,* supra. More important, none of our cases squarely deal with a regulation, such as § 50E.1, that forthrightly extinguishes the property right for nonuse alone. We therefore approach the question presented in this case as one of first impression.

Turning to the governing statute, the plaintiff maintains that § 8-2, by providing that municipalities may not "prohibit the continuance" of nonconforming uses, explicitly withholds the power to abate such uses without regard to owner intent. We have held, on the basis of this language, that municipalities may not amortize nonconforming uses. *James J. F. Loughlin Agency, Inc.* v. *West Hartford,* supra, 310–11. In *Loughlin,* the town of West Hartford enacted a regulation that unconditionally required all nonconforming advertising signs to conform within five years to the more stringent sign regulations of its new ordinance. We held that, by vir-

tue of the limiting language in § 8-2, such compulsory amortization fell outside the scope of municipal power.

Drawing upon the holding in *Loughlin,* the plaintiff argues that terminating its nonconforming use without regard to intent runs afoul of the prohibition set forth in § 8-2. We fail to see, however, in what manner the statute supports this claim. The town of Essex clearly has not attempted to "prohibit the continuance" of the plaintiff's property right. The zoning regulation merely enables the town to seize upon an owner's *lack* of "continuance." Although we affirm that § 8-2 "protects the 'right' of a user to continue the same use of the property as it existed before the date of the adoption of the zoning regulations"; *Helbig* v. *Zoning Commission,* 185 Conn. 294, 306, 440 A.2d 940 (1981); we see no basis for concluding that this right to *continue* the use of property cannot be forfeited by *nonuse.* Such nonuse differs markedly from the criteria that triggered abatement under the ordinance we struck down in *Loughlin,* which purported to authorize the town to abolish vested property rights without any regard to the conduct of the owner.

We therefore conclude that § 8-2 encompasses, within the range of broad powers that it delegates to municipalities, the power to terminate nonconforming uses solely because of nonuse for a specified period. This result is not only consistent with the familiar goal of zoning to abolish nonconforming uses as quickly as justice will tolerate; *Helbig* v. *Zoning Commission,* supra, 306; *Blum* v. *Lisbon Leasing Corporation,* supra, 181; T. Tondro, Connecticut Land Use Regulation (1979) pp. 73–77; but also finds support in the decisions of numerous other courts. These decisions hold that local governments are authorized to fashion zoning regulations that terminate nonconforming uses after a specified period of nonuse without regard to intent. *Wyatt* v. *Board of Adjustment,* 622 P.2d 85, 86 (Colo. App.

1980); *Chicago* v. *Cohen,* 49 Ill. App. 3d 342, 344, 364 N.E.2d 335 (1977); *Fuller* v. *New Orleans,* 311 So. 2d 467, 468 (La. App. 1975); *Canada's Tavern, Inc.* v. *Glen Echo,* 260 Md. 206, 210–11, 271 A.2d 664 (1970); *Prudco Realty Corporation* v. *Palermo,* 93 App. Div. 2d 837, 461 N.Y.S.2d 58, aff'd, 60 N.Y.2d 656, 455 N.E.2d 483, 467 N.Y.S.2d 830 (1983); *State ex rel. Brizes* v. *DePledge,* 162 N.E.2d 234, 237 (Ohio App. 1958); *Maguire* v. *Charleston,* 271 S.C. 451, 452–54, 247 S.E.2d 817 (1978); *Longwell* v. *Hodge,* 297 S.E.2d 820, 823–24 (W. Va. 1982); *State ex rel. Peterson* v. *Burt,* 42 Wis. 2d 284, 288–91, 166 N.W.2d 207 (1969); see also 4A N. Williams, American Land Planning Law (1986) § 115.14; contra *M.B.T. Construction Corporation* v. *Edwards,* 528 A.2d 336, 338–39 (R.I. 1987).

We therefore affirm the judgment of the Appellate Court, including its remand of this case for further trial court proceedings to determine whether the record factually supports the decision of the zoning board of the appeals that the plaintiff did not use the property for a period of one year within the meaning of § 50E.1 of the Essex zoning regulations.

In this opinion the other justices concurred.