[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this appeal brought pursuant to Conn. Gen. Stat. 8-6
et seq., plaintiff, Sakson Nursery, Inc. ("Sakson"), challenges CT Page 794 a decision of the defendant, Planning and Zoning Board of the Town of Greenwich ("PZB"), which overruled the town zoning enforcement officer's refusal to issue a cease and desist order.
The subject property consists of approximately four acres of land located in an RA-4 (4 acre single family) zone in Greenwich. (Return of Record ("R.R.") Item 15). The record reveals that Mr. and Mrs. Krueger, the predecessors in title, developed the subject property as a nursery sometime in 1933 (R.R. Item 7 p. 89). In 1947, the applicable zoning regulations were amended and as of that date, a commercial nursery was a permitted use in an RA-4 zone only when authorized by the board of appeals as a special exception. (R.R. Items 4, 15 6-94 (a)(3).
On October 7, 1989, plaintiff Sakson purchased the property from Mrs. Krueger who signed an affidavit stating that said property had been used continuously as a commercial nursery since 1933. (R.R. Items 3, 8(A)(1).
Based upon Mrs. Krueger's affidavit signed on the day of the closing (R.R. Item 7 p. 80), Mr. Jerry Lansfeld, the town zoning enforcement officer, determined that a continued use of the nursery had existed and thus refused to issue a cease and desist order. (R.R. Item 4).
On February 4, 1988, Ellen Keats, who resides opposite the subject parcel of land, appealed to the PZB requesting it to reverse the zoning enforcement officer's decision and order plaintiff Sakson to cease and desist its use of the property as a commercial nursery. (R.R. Item 1). Subsequent to a hearing, the PZB granted Ellen Keats' appeal and ruled that Mrs. Krueger's nursery had been a nonconforming use which had lapsed due to its discontinuance for at least one year. (R.R. Items 11, 12).
Plaintiff Sakson appeals this decision arguing that the PZB acted illegally, arbitrarily, and in abuse of its discretion.
A. Statutory Compliance
"Review of an action of a planning [and zoning] agency exists only under statutory authority." Hall v. Planning Commission, 181 Conn. 442, 443 (1980). "[T]he right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." Cardoza v. Zoning Commission, 211 Conn. 78, 82 (1989).
In this case, plaintiff appeals the PZB's decision CT Page 795 pursuant to Conn. Gen. Stat. 8-6 et seq.
1. Aggrievement
Aggrievement is a prerequisite to maintaining an appeal. See Conn. Gen. Stat. 8-8a; Caltabiano v. Planning Zoning Commission, 211 Conn. 662, 668 (1989). At the hearing on May 16, 1990, the court found that the plaintiff, as the current owner of the subject property, was aggrieved.
2. Timeliness
A party taking an appeal must do so within fifteen days of the notice of decision by publication. See Conn. Gen. Stat.8-8a. The record disclosed that the PZB's decision was published in the Greenwich Times on April 18, 1988. (R.R. Item 14). Plaintiff served the defendant with its writ, summons and complaint on April 29, 1990 and filed the appeal with the court on May 3, 1990. See Sheriff's Return.
It is found that plaintiffs have complied with the procedural requirements for timely appeal.
B. Scope of Review
The PZB's decision will only be disturbed if it is established that the decision was illegal, arbitrary, or in abuse of the board's discretion. Frito-Lay, Inc. v. PZC,206 Conn. 554, 573 (1988). The court is simply to determine whether the record reasonably supports the conclusions reached by the agency. Stankiewicz v. ZBA, 15 Conn. App. 729, 737 (1988). The burden of proof to demonstrate that the Board acted improperly is upon the plaintiff. Adolphson v. ZBA, 205 Conn. 703, 707
(1988).
While claiming that the PZB acted illegally, arbitrarily, and in abuse of its discretion, plaintiff Sakson formulates the following two arguments:
 (A) that at the time of Mrs. Krueger's sale to the plaintiff, said property and use thereof was a permitted rather than nonconforming use and therefore, not subject to being lost by cessation of use; and
 (B) assuming arguendo, even if it was a nonconforming use, said use was not lost because the record contains no credible evidence that the nonconforming use ceased for more than one year as required by the town's regulations. CT Page 796
Each argument shall be individually discussed.
(A) Permitted Use
The Greenwich Municipal Building Code provides that:
 Sec. 6-94. Permitted use by Special Exception or Special Permit as Indicated Below.
 (a) The following uses shall be permitted in RA-4, RA-2, RA-1, and R-20 and R-12 Zones when authorized by the Board of Appeals as special exceptions. . . .
 (3) Commercial agricultural uses including commercial nurseries and greenhouses, livestock and poultry raising, dairy farming, and kennels, provided that any building or structure designed for such use including the storage of manure or soil fertilizer shall be located not less than one hundred (100) feet from any street or lot line. . . . (emphasis added)
"In construing a zoning regulation, it is [the court's] primary goal to ascertain and give effect to the intent of the local legislative body as expressed in the regulation as a whole." Esses Leasing, Inc. v. Zoning Board of Appeals, 206 Conn. 595,601 (1988). It is found that the language of 6-94 indicates that a commercial nursery shall become a permitted use in an RA-4 zone only when authorized by the PZB.
In this case, the record reveals that the applicable regulation requiring a property owner to obtain a special exception was amended in 1947. (R.R. Item 4). The record is devoid of any evidence that either the instant plaintiff, or Mrs. Krueger, its predecessor in title, ever obtained the required special exception. After an extensive hearing, the PZB concluded that a commercial nursery operated on the property prior to the 1947 zoning regulations and that "[t]his use continued for some years on a legally nonconforming basis." (R.R. Item 12).
The Greenwich Municipal Code defines a nonconforming use as:
 (38) Nonconforming use shall mean a building or land, the use of which does not conform to the use regulations for the zone in which it is situated.
(R.R. Item 8(A)(4)).
As neither the previous nor the current owner of the property CT Page 797 ever sought to have its use as a commercial nursery declared to be a permitted use under the special exception provision of the town's land use regulations, it is the court's opinion that the subject property's current use is nonconforming in that "it does not conform to the use regulations for the zone in which it is situated." (R.R. Item 8(A)(4)). Therefore, it is found I that the record supports the PZB's conclusion that the property's current use was nonconforming. Accordingly, it is further found that because the use of said property was nonconforming, it was subject to be lost by cessation of the use.
(B) Cessation of Use
Plaintiff Sakson next argues that the record lacks credible evidence concerning the discontinuance of the commercial nursery for more than one year.
Greenwich Municipal Code 6-141(b)(5) provides that:
 Where a nonconforming use of land or structure has ceased for a period of (1) year or more or has been changed to a nonconforming use, the nonconforming use shall not again be permitted.
(R.R. Item 8(A)(6)).
In zoning appeals, the scope of judicial review is limited, the court does not retry the case and it is not permitted to substitute its findings or judgment for the wide and liberal discretion vested in the local zoning authorities. See Burnham v. Planning and Zoning Commission, 189 Conn. 261,265-66 (1983).
"[An] administrative agency is not required to believe any witnesses, even an expert. . . [nor] is it required to use in any particular fashion any of the materials presented to it so long as the conduct of the hearing is fundamentally fair." Manor Development Corporation v. Conservation Comm'n, 180 Conn. 692,697 (1980).
The record reveals that the PZB heard extensive testimony concerning the previous use of the property as a commercial nursery during the period when Mrs. Krueger held title. (R.R. Item 7). The record discloses that Mr. Garner, a friend of Mrs. Krueger for 15 years, testified as to Mrs. Krueger's declining physical condition and her cessation of the commercial nursery. (R.R. Item 7 pp. 56-68). Ms. Keats and Ms. Obrig, who lived next door to Mrs. Krueger for 36 years, testified as to the discontinuance of the nursery for some CT Page 798 period of time. (R.R. Item 7 pp. 70, 73-74).
In contrast, the record also reveals that the PZB heard testimony from Mrs. Krueger's son and Mr. Gex regarding the property's small, but continued use as a nursery. (R.R. Item 7 pp. 88-97). In addition, Mrs. Krueger signed an affidavit on the date of the sale that her use of the property as a commercial nursery had continued since 1933. (R.R. Item 3).
The record reveals that the PZB, nonetheless, concluded that the nonconforming use of the land as a commercial nursery had ceased for a period of one year and therefore, pursuant to 6-141(b), the right to operate a commercial nursery on said property had lapsed. (R.R. Item 12).
It is the law that factual findings and determinations concerning the cessation of the use of the subject property are within the liberal discretion vested in the local authorities. Therefore, as the record contains considerable testimony which was heard by the PZB concerning the cessation issue, it is found that the record supports the PZB's decision that the use of the property as a commercial nursery had ceased for a period of one year or more.
The record reasonably supports the PZB's decision and therefore, plaintiff's appeal is dismissed.
JOHN J. P. RYAN, JUDGE