[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs have taken this appeal from the defendant board's denial of their application to grant them relief from a cease and desist order of the zoning enforcement officer of the town of Coventry which prohibited any further excavation or removal of gravel by the plaintiff, Bruce Richard Halloran (hereafter referred to as the plaintiff), from a parcel of land that they purchased in 1988, and is now owned by his wife, Barbara Halloran, on the west side of Goose Lane in Coventry, until a special permit for that purpose has been issued by the town in order to allow the continuance of the plaintiffs' nonconforming use of the property. CT Page 7002
The record discloses the following pertinent underlying facts. The property was purchased for the purpose of excavating and removing gravel by the plaintiff for use in his business of grading and filling residential building lots, and the Hallorans applied for and received special permits for that use as required under § 3.13.8 of the town's zoning regulations in 1989, 1991 and 1992. Another application for renewal of the permit was filed on October 25, 1993, but was withdrawn by the plaintiff in a letter dated February 10, 1994, in which he stated that he believed that gravel excavation and removal on the property pre-dated the enactment of the zoning regulations on October 9, 1957, and that he was therefore entitled to continue his gravel operations "just as my neighbor has been allowed to do [and that any] ruling made regarding grandfathering will apply to both of us alike."
The "neighbor" that the plaintiff referred to in his letter is Andrew R. Pollansky, the owner of an abutting property on Goose Lane which is also used by him for sand and gravel excavation, and it is apparent from comments made by the plaintiffs' attorney in the course of the hearing, that there have been ongoing land use disputes between them which have generated litigation in this court, as well as the filing of an action by the plaintiffs in the federal court which was pending at the time of the hearing held by the board on June 20, 1995. In a letter to the plaintiff dated February 3, 1995, the town zoning enforcement officer, Jeffrey Polhemus, noted that both the Hallorans and "the Pollansky family [had] made claims that [their] gravel excavation operations are grandfathered", and informed him of a new provision of the zoning regulations (Section 14.7), which allowed property owners to obtain a declaratory ruling from the planning and zoning commission after a hearing, rather than to risk an adverse decision by the zoning enforcement officer and then having to take an appeal to the zoning board of appeals from his cease and desist order.
Polhemus also stated in his letter that he did not yet have sufficient information to form an opinion as to either the plaintiff's claim or Pollansky's claim, but that the Pollanskys had filed an application for a ruling on their claim under the new provisions of the regulations, and that the plaintiff still had an opportunity to utilize that procedure as well, if he chose to do so. The plaintiff met with Polhemus after he received the letter and told him that he did not think that he would get a "fair shake" from the planning and zoning commission, and CT Page 7003 thereafter, he submitted an affidavit in support of his claim from Norman Christensen, who stated that he had purchased the property in 1955 for use as a "gravel/fill operation", that he later donated it to a church for use as a camp which was never built, but that from the time he bought it in 1955, "the land use has not changed or been abandoned from a gravel/fill operation."
Polhemus concluded that the evidence the plaintiff had submitted was insufficient to prove his claim of a legal nonconforming use, and on March 17, 1995, he issued an order that the plaintiff "cease and desist any present or future gravel excavation and/or removal at this Goose Lane site until you receive a special permit for such operation." An appeal was taken from the cease and desist order on April 19, 1995, and after a hearing that was held on June 20, 1995, the defendant board voted three to two on July 18, 1995 to grant the appeal, but because § 8-7 of the General Statutes requires an affirmative vote of at least four board members to sustain the appeal, the motion failed, and thereafter, this appeal was taken in which the plaintiffs seek to have the court reverse the board's decision on the ground that it was illegal, arbitrary and in abuse of its discretion and on the additional ground that no reasons were stated for its decision.
In the course of the hearing before the board, the plaintiff submitted all of the deeds in the chain of title to the property from the time the Christensens acquired it on August 18, 1955 to May 25, 1988, when it was conveyed by James P. Strano and Ellen Strano to the Hallorans, and the first such deed, which was recorded on March 28, 1957 from the Christensens to a Lutheran church, stated that the property "shall be used solely for the purpose of operating and maintaining a Lutheran church camp for children [and that if it was] used for any other purpose", it would revert to the grantors. That condition was still in effect when the zoning regulations were adopted on October 9, 1957, until it was modified in a deed dated December 21, 1959 and recorded February 25, 1960, that permitted the church "to operate and maintain said premises for any religious purpose whatsoever but for no other purposes . . .", and that deed restriction remained in effect until the property was reconveyed by the church to the Christensens sixteen years later by a deed that was recorded on March 17, 1976.
Christensen's testimony at the hearing was that when he acquired the property in 1955 he was actively engaged in the CT Page 7004 construction business and that he intended to haul gravel from the property and utilized the property for that purpose until he decided to turn it over to the church in 1957 for use as a camp for children. He also stated that although he did not know it at first, the church "made a deal" with his neighbor, Pollansky, to haul gravel off the property, and that he observed him doing so on a fairly regular basis on Sundays went he went to church.
He stated that Pollansky told him that he promised to fix the road and to put in a well for the church, but that the camp was never built and that he resumed using the property for hauling gravel after the property was deeded back to him in 1976. He also said that during the period the church used the property, gravel was being hauled out "every other week", and that during that time Christensen himself never intended to abandon his right to remove gravel from the property.
The plaintiffs also offered into evidence an affidavit from Ellen Strano who owned the property with her husband from 1982 to 1988, in which she stated that they were aware of the gravel deposits, that they had "planned" to use the gravel and fill in the construction of their own home in Tolland, and that although the land was put "into forestry" they never planted any trees "in the area where the gravel operations had been conducted." She also stated that "[w]e did not intend to abandon the use of the property as a source of [gravel] even though we did not plan to sell gravel to the public."
Although Pollansky was not present at the hearing, he submitted a letter to the board dated and signed on the day of the hearing that he said was prompted by the affidavits that had been submitted to Polhemus by Christensen and that he felt "compelled" to provide the board with his testimony as to the history of the property and of his involvement. The letter referred to the two deeds from Christensen to the church and the use restrictions contained therein, and went on to state that "[d]uring the early 1960's, I cleared the trees and graded off an area in the lower portion of the property for outings and other recreational activities of the [church at its request and that] there was not a gravel operation . . . on this parcel [although he] did do a landscaping/earth moving project for the [church and that he was] not aware of any gravel removal activity until 1989."
Counsel for the plaintiffs did not object to the reading of CT Page 7005 Pollansky's statement into the record, nor did he request a continuance of the hearing for the purpose of securing his attendance and cross-examining him before the board. His only comment was to refer to the ongoing litigation between the parties and that Pollansky needed no "excuse to come and testify against Mr. Halloran in anything [and that he would] leave it to you as to who you're going to believe [and that] I know who I believe."
The plaintiffs in this case moved to supplement the record by including a transcript of the meeting of the board on July 18, 1995 because it contained a complete record of the discussions between the members of the board of the evidence that had been presented at the public hearing and included questions put by the members to the attorney for the board concerning the legal issues that were involved, as well as the comments of the members concerning the application of the law to the evidence that had been presented. The court granted the motion prior to the hearing and that transcript is part of the record available for the court's review for the purposes of this appeal.
The plaintiff, Barbara Halloran, offered evidence to show that she has been the sole record owner of the property since July 14, 1988, and the court, therefore, finds that she is aggrieved because the board has upheld the zoning enforcement officer's cease and desist order concerning the use of her property that is the subject of this appeal. Ziegler v.Thomaston, 43 Conn. Sup. 373, 376 (1994). The court also finds that the plaintiff, Bruce Richard Halloran, as the person who signed the application to grant him relief from that order, had the requisite specific, personal and legal interest in continuing his prior use of the property, to be aggrieved by the board's denial of his application and therefore to have standing to bring this appeal. DiBonaventura v. Zoning Board of Appeals,24 Conn. App. 369, 375-77 (1991).
The plaintiffs' principal claim in this appeal is that the action taken by the defendant board is void because when it voted to uphold the cease and desist order which was the subject of their appeal, the board failed to "state upon its records the reason for its decision", which the plaintiffs claim is mandated by § 8-7 of the General Statutes, particularly where the violation of such an order may give rise to statutory civil and criminal sanctions and penalties under § 8-12 of the General Statutes. The only authority cited in support of their argument CT Page 7006 is Angelsea Productions, Inc. v. Commission on Human Rights Opportunities, 236 Conn. 681 (1996), in which the Supreme Court applied recognized principles of statutory interpretation in reaffirming its prior determinations that the policy reasons for the strict enforcement of time limits in the processing and investigation of complaints of discrimination was to insure the speedy resolution of such claims and the prompt elimination of the offending conduct. Id. 692.
In Angelsea, the Supreme Court relied on its prior interpretation of the word "shall" as mandatory in the context of time limitations for discriminatory complaint procedures and also applied the familiar principle that "because [the] legislature is presumed to be aware of [the] interpretation that courts have placed on existing legislation [the] failure of [the] legislature to amend [the] statute to change our interpretation presumes that it acquiesced in our interpretation." Id. 694. In the context of appeals from land use agencies, however, even very specific statutory requirements that reasons be stated with particularity, have not been enforced based on a very "persuasive aspect of legislative history, [namely] the failure of the legislature to pass legislation vitiating our long established line of authority requiring the trial court on administrative appeals from land use agencies to search the record for reasons supporting the agency's decision." Gagnon v. Inland Wetlands Watercourses Commission,213 Conn. 604 at 610 (1990).
In Gagnon, the Supreme Court stated that the most persuasive argument for extending the rule in zoning cases to appeals from decisions of inland wetlands commissions, was that lay members of local land use bodies can hardly be expected to invariably comply with the many statutory mandates under which they operate and "[t]he case law requiring the trial court on appeal to search the record for the agency's reason for its decision is a practical and fair reaction to this scenario." Id. 611. The duty of the trial court to do so in appeals from zoning boards has been enunciated in a long line of cases, and the rule has been applied by the Appellate Court to a decision granting variances by a zoning board of appeals; Stankiewicz v. Zoning Board of Appeals,15 Conn. App. 729 (1988), and to an appeal to the board from a ruling of a zoning enforcement officer. Manchester v. ZoningBoard of Appeals, 18 Conn. App. 69 (1989).
Where a zoning board of appeals reviews the decision of a zoning enforcement officer, "[i]t is the board's responsibility, CT Page 7007 pursuant to the statutorily required hearing, to find the facts and to apply the pertinent zoning regulations to those facts."Caserta v. Zoning Board of Appeals, 226 Conn. 80, 90 (1993). It is the board's function to make a de novo determination of the issue before it, unfettered by deference to the decision of the zoning officer, and on an appeal from the board's action, the trial court "must focus on the decision of the board and the record before it, because it is that decision and record that are the subject of the appeal under § 8-8 [of the General Statutes]." Id. 90-91.
The principal procedural limitations on the hearing are that no one may be deprived of the right to produce relevant evidence or to cross-examine witnesses produced by his adversary or to be fairly apprised of the facts upon which the board is asked to act. Id. 90. The rights of the plaintiffs in such a proceeding are fully protected where they are given an opportunity to present their case, are fully informed of any letters in opposition, "and were not denied the opportunity, if they had wished to ask for it, to call and examine the writer of [any such] letter." Welch v. Zoning Board of Appeals, 158 Conn. 208,213 (1969).
In this connection, it should be noted that the plaintiffs assert in their brief that the Pollansky letter could not have been "evidence" from which two members of the board could conclude that there had been an abandonment of the use of the property for the removal of gravel at some time after the transfer of the property by the Christensens and the enactment of the zoning regulations later in 1957. They refer to the fact that the letter was submitted on the day of the hearing and that he "did not appear to be cross-examined [and that] self-serving allegations which are not subject to cross-examination are not evidence upon which a fair, logical or reasonable decision can be based."
Proceedings before a zoning board of appeals are informal and the strict rules of evidence do not apply, so that an unsworn statement made by an attorney may be considered as evidence even though it is the only information presented in the course of the hearing with respect to a particular factual issue. Parsons v.Board of Zoning Appeals, 140 Conn. 290, 292 (1953). Our Appellate Court has recently reaffirmed the liberal rules governing the admission of evidence in the context of an appeal involving a claimed legal nonconforming use, where it held that CT Page 7008 the facts in a statement to the board by an attorney in the nature of an offer of proof, which was made in the presence of opposing counsel who did not object, "were properly before the board [and it] was entitled to accept the statement in lieu of sworn testimony and to give it such credence and weight as, in their minds, it merited." Conetta v. Zoning Board of Appeals,42 Conn. App. 133, 139 (1996).
The record in this case, as summarized earlier in this opinion, clearly establishes that the plaintiffs not only failed to object to the reading of Pollansky's statement, but that they also did not request a continuance of the hearing so that he could personally appear and be cross-examined by counsel for the plaintiffs and questioned by the board, and they were therefore not denied the "opportunity, if they had wished to ask for it" to call and examine the writer of the letter in opposition to the plaintiffs' claims. Welch v. Zoning Board of Appeals, supra,158 Conn. 213. The plaintiffs cannot claim prejudice where they had an opportunity to fully familiarize themselves with the facts upon which the board was asked to act, and they were not deprived of a fair opportunity to cross-examine witnesses and to offer evidence in explanation or rebuttal, or to request a continuance in order to give them an opportunity to do so. See Lathrop v.Planning Zoning Commission, 164 Conn. 215, 221 (1973).
The plaintiffs' decision not to pursue their procedural right to cross-examine Pollansky about the damaging fact specific assertions in his letter to the board concerning the critical factual issues raised in their appeal, when they knew or should have known that their failure to do so might "easily lead to the acceptance of [his] testimony at its face value when its lack of credibility or the necessity for accepting it only with qualifications [could best] be shown by cross examination . . .";Wadell v. Board of Zoning Appeals, 136 Conn. 1, 8 (1949); does not justify what is essentially a request by the plaintiffs for the judicial review by this court of the board's assessment of the credence and weight that it should have given to the facts contained in his statement. The reviewing court in a zoning appeal may not substitute its judgment for that of the board and its decision will not be disturbed as long as an honest judgment has been reasonably and fairly made after a full hearing, because the credibility of witnesses and the determination of the factual issues are matters within the province of the board. Stankiewicz
v. Zoning Board of Appeals, supra, 731-32. CT Page 7009
A use of property is considered to be nonconforming if it was lawful and in existence at the time the zoning regulations were enacted and in order to qualify as an existing use it must be utilized in such a way as to be known in the neighborhood as used for a particular purpose. Cummings v. Tripp, 204 Conn. 67, 91-92
(1987). In order to come within the provisions of the zoning regulations, the use must be actual, and it is not enough that it is a contemplated use even though the owner may have planned to do so or had purchased the property for that particular purpose.Fairlawns Cemetery Assn., Inc. v. Zoning Commission,138 Conn. 434, 444 (1952).
The party claiming the benefit of a nonconforming use bears the burden of proving a valid nonconforming use in order to be entitled to use the property in a manner other than that permitted by the zoning regulations. Cummings v. Tripp, supra,204 Conn. 82-83. Although "abandonment" is a question of fact which implies a voluntary and intentional renunciation, the intent to abandon may be inferred as a fact from the circumstances, and because the conclusion as to the intention of the landowner is an inference of fact it is not reviewable unless it was one which the trier could not reasonably make. Id. 93.
The plaintiffs make the claim in their brief that § 14.2.4 of the Coventry zoning regulations is illegal in that it provides that "[a]ny non-conforming use shall lose its non-conforming status and shall thereafter conform to these Regulations if said use is abandoned for a period of one (1) year or more . . .", thereby constituting what they perceive to be a violation of § 8-2 of the General Statutes which prohibits any local regulation that imposes a time limitation on a nonconforming use "solely as a result of nonuse . . . without regard to the intent of the property owner to maintain that use." There is no basis for such a claim under Connecticut case law, however, because the use of the word "abandoned" in a zoning regulation has consistently been construed by our courts as requiring "an intent permanently to cease the nonconforming use."Essex Leasing, Inc. v. Zoning Board of Appeals, 206 Conn. 595,600 (1988).
If the plaintiffs' claim is that the board misapplied the regulation or applied an improper legal standard in its review of their appeal, the court's review of the transcript of the meeting of July 18, 1995 shows that before the board began its discussion of the evidence and proceeded to vote on the plaintiffs' appeal, CT Page 7010 counsel instructed them fully and correctly on the legal rules they would have to apply, with particular emphasis on the fact that proof of abandonment required evidence of the intention of the prior owners of the land to give up the nonconforming use. See Caserta v. Zoning Board of Appeals, 41 Conn. App. 77 (1996). Moreover, when one of the board members referred to the one year provision in the regulations, counsel repeated what he had said about the necessity of finding that there had been an intention to abandon (transcript, July 18, 1995, pp. 40-41) (hereafter "Tr."), and the record also reflects the fact that one of the principal subjects of the board's discussion was what the intention of the church may have been during the nineteen year period that it had title to the property subject to the restrictions imposed in the deeds from the Christensens in 1957 and 1959.
After counsel informed the board that it would first have to consider whether the plaintiffs had proved that there was "a gravel operation going on on the property at the time the zoning regulations went into effect [on October 9, 1957 when] it was owned by the church", (Tr. 19) there was a discussion as to whether an intent to abandon that use on the part of the church could be inferred from the restrictions contained in their deeds and the conflicting evidence that had been presented concerning the scope, extent and duration of the earth removal activity. The board was further instructed that if it found that there was no established gravel operation in existence on the effective date of the regulations the plaintiffs would have failed to establish a valid pre-existing nonconforming use. See Friedson
v. Westport, 181 Conn. 230, 234-35 (1980).
Although the plaintiffs argue that Christensen's testimony was sufficient to determine the intent of both parties, a reasonable trier of fact could find that the facts contained in Pollansky's letter were consistent with an intent on the part of the church, if not of both parties, that the property was not to be used for the purpose of excavating gravel for commercial purposes, but only to serve the needs of the church as limited in the deed to a children's camp or to otherwise promote the church's religious purposes. (Tr. pp. 23-27, 29-46).
Another issue that could reasonably have influenced the board's decision to deny the plaintiffs' appeal and which was considered and discussed before the vote was taken, involved the sufficiency of the Strano affidavit as to the continuity of use CT Page 7011 of the property between 1982 and 1988. The affidavit stated that the Stranos "planned" to use the gravel and fill for the construction of a home in Tolland, but did not indicate whether they had ever done so, and also stated that they did not abandon the use of the property as a source of sand and fill "even though [they] did not plan to sell gravel to the public."
A nonconforming use is not abandoned where there is a mere temporary suspension for a reasonable time, for reasons beyond the owner's control, where there exists a manifested intention on the part of the owner to resume the nonconforming use as soon as the condition that results in the suspension of the use has been corrected or resolved. Ullman ex rel. Eramo v. Payne,127 Conn. 239, 241-42 (1940). On the other hand, the board could have reasonably found that the Strano affidavit was insufficient because a nonconforming use must be an actual use, and the fact that a use is contemplated or that the property was bought for the particular use, is not sufficient unless the property is "irrevocably committed to that use." Lebanon v. Woods,153 Conn. 182, 197 (1965).
For the foregoing reasons, the court finds that the board's de novo determination that the plaintiffs' present use of the property did not constitute a legal nonconforming use is reasonably supported by the record and that there was a sufficient basis for upholding the cease and desist order issued by the zoning enforcement officer.
Accordingly, the plaintiffs' appeal is dismissed.
Harry Hammer Judge Trial Referee