JEROME W. BLUM ET AL. v. LISBON LEASING CORPORATION, INC., ET AL.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued April 7—decision released June 14, 1977

*Kevin E. Booth,* with whom, on the brief, were *Leo J. McNamara* and *William J. Meuser,* for the appellants (defendants).

*John R. FitzGerald,* for the appellees (plaintiffs).

LONGO, J.   The plaintiffs instituted an action in the Superior Court seeking damages and an injunction prohibiting the defendants from using certain premises for business purposes not permitted by the zoning regulations.   The defendants have appealed to this court from the judgment granting the requested injunction.   The court denied the plaintiffs' claim for damages.

Having examined the defendants' attack on the court's findings we arrive at the following summary of the pertinent facts:   In November, 1969, Ralph P. Chick owned a parcel of land located on route 138 in the town of Lisbon where for many years he had conducted a gasoline filling station and automobile repair shop.   In December, 1969, the premises were leased to Andre J. Messier and at various times during the lease term, repair, maintenance and tire work were performed on trucks and equipment for three transportation companies.   On March 4, 1970, the Lisbon Leasing Company was incorporated, and, on March 18, the premises were sold to

the corporation which was empowered by its certificate of incorporation to buy, sell and lease all types of motor carriers and equipment.

The town of Lisbon adopted zoning regulations on July 6, 1970, placing the premises in issue in an R-40 residential district. The regulations prohibited the use of any land or building for any purpose not in conformity with all regulations, requirements and restrictions specified in the regulations, but permitted the continuance of any nonconforming use or building lawfully existing at the time of the adoption of the regulations.[1] The zoning regulations do not allow the uses made by the defendants of the premises in an R-40 residential district.

Following the adoption of the regulations, the defendant Lisbon Leasing Corporation discontinued the use of the premises as a gasoline filling station and automobile repair garage and commenced using the land and building for a tire recapping manufactory, a retail tire store, a radiator repair shop, a tire storage center, a trucking terminal and a tire dump. The various operations were conducted by the three defendant corporations, all of which were owned by the Messier family.

On November 10, 1971, the Lisbon zoning enforcement officer who was also the chairman of the zoning board issued a building permit for the enlargement

---

[1] Article II, section 2.4.1. "No building shall be erected, moved, altered, rebuilt or enlarged nor shall any land or building be used, designed or arranged to be used for any purpose or in any manner except in conformity with all regulations, requirements, and restrictions specified in these regulations for the district in which such building or land is located."

Article VI, section 6.1. "Any nonconforming use or building, lawfully existing at the time of the adoption of these regulations . . . may be continued under the same or different ownership . . . and may be . . . structurally altered or enlarged."

of the existing building on the premises. The permit contained the following notation: "Non-conforming use allowed to expand Article 6.1 Zoning Regulations." The plaintiff Jerome Blum complained when he noticed the structurally altered and enlarged building, and thereafter he and other plaintiffs who were abutting property owners or owned property in the immediate area of the defendants' premises made numerous complaints to the planning and zoning commission concerning the changes in the use of the premises. These complaints were discussed at seven meetings of the commission between June 1, 1971, and June 6, 1972, but the complaints failed to produce formal action by the commission or by the enforcement officer. The complaints related to the smoke, loud noises, odor of burning rubber, the tire recapping operation which starts between 5:30 a.m. and 7:00 a.m., the arrival of trucks at irregular hours, sometimes as early as 2:30 a.m., the fumes and odors produced by idling diesel engines and tractors, and the soot deposited on property owned by the plaintiffs—all of which tended to destroy the plaintiffs' use and enjoyment of their properties. The trial court viewed the premises, confirming evidence introduced by the plaintiffs that the premises in question were unsightly, noisy and odorous.

Among the conclusions reached by the trial court were the following: The zoning regulations adopted by the town of Lisbon on July 6, 1970, did not permit the conduct of any business in an R-40 residential district; the use of the premises as a gasoline station and automotive repair shop was nonconforming, but the nonconforming use was lawful as long as it continued; after July 6, 1970, the Lisbon Leasing Corporation did not continue the

nonconforming use as a gasoline filling station and repair shop, thereby abandoning the use of the premises for those purposes; the premises were not actually used for the contemplated purposes of conducting a tire recapping manufactory, a trucking terminal, a retail tire store, a radiator repair shop, and a tire storage center until after July 6, 1970. Finally, the court concluded that the use made by the defendants was not the same as that made by the prior owner, and that the use violated the zoning regulations of the town of Lisbon.

In their first assignment of error, the defendants contend that the plaintiffs are not entitled to injunctive relief without first having appealed to the zoning board of appeals, as provided by statute. The defendants cite the many decisions of this court wherein we have held that "when a party has a statutory right of appeal from the decision of an administrative officer or agency, he may not, instead of appealing, bring an independent action to test the very issue which the appeal was designed to test." *Country Lands, Inc.* v. *Swinnerton,* 151 Conn. 27, 33, 193 A.2d 483; *State Water Commission* v. *Norwich,* 141 Conn. 442, 447, 107 A.2d 270; *McNish* v. *American Brass Co.,* 139 Conn. 44, 53, 89 A.2d 566. "This power [to review] is vested in a zoning board of appeals, both to provide aggrieved persons with full and adequate administrative relief and to give the reviewing court the benefit of the local board's judgment." *Country Lands, Inc.* v. *Swinnerton,* supra, 33, 34; see 2 Rathkopf, Zoning and Planning (3d Ed.) p. 37-6, § 1.

The present case is distinguishable from those cases in which we have held that the exhaustion of administrative remedies is a prerequisite to appeal.

In the present case, the plaintiffs do not seek review of adverse action taken by a zoning board; rather, they seek to attack directly the existence of a nonconforming use concerning which the zoning board has refused to take any official action. Nor is this a situation in which the plaintiffs seek to launch a collateral attack on an order of an administrative body. Rather, they seek to attack directly the actions of the defendants in using their property for impermissible purposes in the absence of administrative action. See *Smith* v. *F. W. Woolworth Co.,* 142 Conn. 88, 93, 111 A.2d 552. There is, in fact, no controversy to take before the board of appeals, which is only authorized to review the actions of the zoning board and which is not empowered to find facts or conduct the initial determinations which are the province of the zoning board. If the plaintiffs have suffered special damages as alleged in their complaint, the court has equitable jurisdiction and may grant injunctive relief. *Schomer* v. *Shilepsky,* 169 Conn. 186, 194, 363 A.2d 128; *Fitzgerald* v. *Merard Holding Co.,* 106 Conn. 475, 483, 138 A. 483.

The defendants next claim that there was no showing that the defendants abandoned their use of the premises as a gasoline station or automotive repair shop and that the portion of the injunction prohibiting those uses should, therefore, be vacated. We find no merit to this claim. The defendants first assert that the issue of abandonment was not raised. Clearly, however, the allegations in the plaintiffs' complaint that the present use of the premises violated the zoning regulations required a resolution by the court of the question whether the use was justified as a preexisting nonconforming use. Resolution of this issue, in turn, required a determination

whether the defendants had abandoned the nonconforming use. The inquiry into abandonment and the strict rule that the nonconforming use must be continuous are further necessitated by the indisputable goal of zoning to reduce nonconforming to conforming uses with all the speed justice will tolerate. *DeForest & Hotchkiss Co.* v. *Planning & Zoning Commission,* 152 Conn. 262, 205 A.2d 774; *Gunther* v. *Board of Zoning Appeals,* 136 Conn. 303, 309, 71 A.2d 91. The trial court concluded that after July 6, 1970, the defendant Lisbon Leasing Corporation did not continue the nonconforming use as a gasoline and repair station, and that the use was, therefore, abandoned. The only question remaining for review, therefore, involves the permissibility of that determination based on the evidence presented to the court. The parties to this action are in agreement that prior to the enactment of the regulations, the premises were operated as a gasoline station and repair garage. Credible evidence, however, was presented to the trial court that those uses had been intentionally abandoned after enactment of the regulations and it was for the trial court to determine the weight to be accorded that evidence. For example, the town clerk, who lived a mile from the premises, testified that she had frequent opportunity to observe that the small, two-pump country-type gasoline station operated by the prior owner often looked closed. She testified that after July 6, 1970, the building was expanded, the use of the premises as a gasoline filling station and repair shop ceased, and the premises became a tire recapping manufactory and a trucking terminal.

It is a well-established rule that before a nonconforming use can be found to have been abandoned, there must be an intention on the part of the

owner to relinquish permanently the nonconforming use. *Dubitzky* v. *Liquor Control Commission,* 160 Conn. 120, 125, 273 A.2d 876; *Darien* v. *Webb,* 115 Conn. 581, 162 A. 690. As we stated in *Bianco* v. *Darien,* 157 Conn. 548, 556, 557, 254 A.2d 898: " 'Abandonment in this jurisdiction is a question of fact. *Richardson* v. *Tumbridge,* 111 Conn. 90, 93, 149 Atl. 241. It implies a voluntary and intentional renunciation "but the intent may be inferred as a fact from the surrounding circumstances." *Newkirk* v. *Sherwood,* 89 Conn. 598, 605, 94 Atl. 982, 984.' *Appeal of Phillips,* 113 Conn. 40, 46, 154 A. 238. Since, however, the conclusion of intention is an inference of fact, it 'is not reviewable unless it was one which the trier could not reasonably make.' *Finlay* v. *Swirsky,* 98 Conn. 666, 671, 120 A. 561; *Hess* v. *Dumouchel Paper Co.,* 154 Conn. 343, 349, 225 A.2d 797." See *Dubitzky* v. *Liquor Control Commission,* supra; 2 Rathkopf, Zoning and Planning, p. 61-3; 82 Am. Jur. 2d 738, Zoning and Planning, § 215. At trial Andre J. Messier, an officer of all the defendant corporations, when asked on cross-examination whether any uses were being made of the premises other than radiator cleaning, tire recapping, truck repair, truck intershipping and truck leasing, responded: "That just about covers it, I guess." Further, the evidence revealed that Lisbon Tire & Retread Company, Inc., was incorporated on September 30, 1970, and that a Connecticut sales and use tax permit was issued on January 15, 1971, with the legend: "Date business started 10/21/70." Clearly, from the above evidence that the business was not operational until the October following adoption of the zoning regulations, that the premises did not appear to frequent observers to be operational as a gasoline

station and auto repair shop following adoption of the regulations, and from the testimony of one of the defendants' officers indicating that the premises were not used as a gasoline station and auto repair shop, the court was justified in concluding that those uses had been intentionally abandoned. We find that the trial court did not err in concluding that the original nonconforming use had been abandoned, that the defendants were not thereafter entitled to continue the nonconforming use and that the plaintiffs were entitled to the injunction issued by the trial court.

There is no error.

In this opinion the other judges concurred.