[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an administrative appeal. The appellant was the unsuccessful appellant to the defendant board from a cease and desist order issued by the zoning enforcement officer of the town of North Haven. That officer had ordered the plaintiff to cease and desist from operating a "gravel operation of some sort" without having obtained site plan approval by the North Haven Planning Zoning Commission.
"Before any work can proceed (the zoning enforcement officer wrote), site plan approval must be granted by the Planning 
Zoning Commission. In addition, since there are wetlands on the property, an application must be submitted to the North Haven Inland Wetlands Commission no later than the day an application is submitted to the Planning Zoning Commission." Nowhere in its appeal does the plaintiff challenge the order to submit a plan to the town wetlands agency.
The plaintiff here claims that the "property has been used for sand and gravel mining and sales operations since [the plaintiff] purchased the property in 1949." "This is a pre-existing use of the property which pre-dates the zoning regulations," the plaintiff further alleges.
The defendant board denied the plaintiff's appeal to it in a unanimous decision citing reasons that:
"1. The Board finds abandonment was proven and that the current operation on the site is different than the operation conducted in 1963 when L. G. DeFelice used the site while constructing Interstate 91. CT Page 2931
2. The Board finds a link of continual use on the particular parcel of the property.
3. The Board finds a need for site plan approval."
This appeal followed.
Before this matter may be considered on its merits, the plaintiff must be found to be aggrieved by the decision of the defendant board. The plaintiff as the unsuccessful owner applicant is afforded a statutory right of appeal. Conn. Gen. Stat. 8-8(a) Bossert Corporation v. Norwalk, 157 Conn. 279, 285
(1968). Rogers v. Zoning Board of Appeals, 154 Conn. 484, 488
(1967).
At the hearing before the defendant board, the plaintiff submitted that the parcel in question was a part of a larger piece of land which was first leased by the plaintiff from the New York, New Haven Hartford Railroad Co. between the years 1949 and 1959. On March 16, 1949, a building permit was issued by the building inspector of the Town of North Haven to erect a sand and gravel plant. Exhibit A. In 1959, the plaintiff purchased the land from the railroad. In the 1960's the State of Connecticut condemned a 300 foot wide strip of land through this parcel in connection with the construction of Interstate 91. The subject parcel then fell on the westerly side of I-91. A significantly larger part of the plaintiff's land was left on the easterly side of I-91. Prior to the condemnation of the I-91 strip, the plaintiff had erected at least two cinderblock buildings, elevated hopper bins with conveyor belts in this area taken for I-91. Exhibit B. During the construction of I-91, the plaintiff entered into a contract with L. G. DeFelice Sons, Inc. That corporation had the contract to build I-91 in the area. The contract, Exhibit C, permitted DeFelice to mine the area in connection with building I-91 and to deposit unsuitable material on the property. This it did. No stockpiling or removal of material occurred on the subject property after 1966 until 1990. After I-91 was built, the subject property lay vacant until 1990. The parcel is a thin strip lying between I-91 on its east and property owned by the railroad on its west. A 20 foot right of way exists over the railroad property and continues north to a street, Sackett Point Road. Otherwise the property is interior land and land locked. There is an easement in favor of the United Illuminating Co. across the top of the parcel, and the Muddy River runs through the top of the property and alongside the right of way north of the property. The property looks like a tooth pick starting out on the bottom or south at a point and running north approximately 1250 feet with a top or north border of approximately 206 feet in width. CT Page 2932
For some years the plaintiff conducted its business on that part of its land which remained on the easterly side of I-91. Part of that parcel was sold by the plaintiff to the town to use for a town beach, but when it was discovered that the water was not suitable for swimming, the town sold it back to the plaintiff. Recently-December, 1989, the plaintiff sold that parcel to a third party. The plaintiff then sold the remaining parcel on the easterly side of I-91 the one on which it had been conducting its business and transferred its business to the subject property. Plaintiff started constructing roads, constructed a scale to weigh trucks, and brought in a sand sifter when the town zoning enforcement officer served the plaintiff with the cease and desist order claiming the plaintiff had failed to obtain site plan and wetlands agency approval before starting its operation on this parcel.
The plaintiff appealed the cease and desist order to the defendant board which sustained the order. This appeal followed.
Having found that the plaintiff has standing to bring this action, the central remaining issue is did the plaintiff have to obtain site plan approval by the Town Planning Zoning Commission and approval from the Town Inland Wetlands Commission before it started construction.
Municipal regulation of land use regulation is divided among four agencies which are 1) the zoning commission, 2) the planning commission, 3) the zoning board of appeals, 4) the inland wetlands agency. See Title 8 Connecticut General Statutes. This case concerns the planning commission and the zoning board of appeals and the inland wetlands agency.
"The zoning regulations may require that a site plan be filed with the commission or other municipal agency or official to aid in determining the conformity of a proposed building, use or structure with such regulations." Conn. Gen. Stat. 8-3(g). SSM Associates Limited Partnership v. Planning and Zoning Commission,15 Conn. App. 561, 566 (1988).
"[T]he term `site plan,' as used in 8-3(g), is a general term which is used in a functional sense to denote a plan for the proposed use of a particular site, purporting to indicate all the information required by the regulations for that use." Id. at 566.
 The zoning treatises define it broadly, in a fashion not inconsistent with our reading of its use in General Statutes 8-3(g). "A `site plan' is a physical plan showing the layout and design CT Page 2933 of the site of a proposed use, prepared by the builder or developer. It generally should indicate the proposed location of all structures, parking areas and open spaces on the plot and their relation to adjacent roadways and uses. Specifically, items such as grade elevation levels, drainage plans, means of access, landscaping, screening, architectural features, building dimensions and other elements relevant to the community welfare are properly included in a site plan. . . ." (Emphasis added.) 8 P. Rohan, Zoning and Land Use Controls, 53.06 n. 1. "A site plan is a plan required to be submitted by the builder, showing the proposed location of the buildings, parking areas, and other installations on the plot, and their relation to existing conditions, such as roads, neighboring land uses, natural features, public facilities, ingress and egress roads, interior roads, and similar features." 2 A. D. Rathkopf, The Law of Zoning and Planning 30.04[1]. Id. at 566-567.
In considering a site plan, the agency has no independent discretion beyond determining whether the plan complies with the site plan regulations and applicable zoning regulations. Allied Plywood, Inc. v. Planning and Zoning Commissions, 2 Conn. App. 506,512 (1984) Cert. denied 194 Conn. 809 (1984). "A site plan may be modified or denied only if it fails to comply with requirements already set forth in the zoning or inland wetland regulations." Conn. Gen. Stat. 8-3(g).
An appeal from the order of a municipal enforcement officer is taken to the zoning board of appeals. Conn. Gen. Stat. 8-6(1) and 8-7. On such an appeal the zoning board of appeals acts in a quasi-judicial capacity.
The North Haven Planning Zoning Commission regulations provide: "Prior to the issuance of a building permit for any permitted use in any district with the exception of a one family residential dwelling, a site plan shall be approved by the Planning Zoning Commission." Regulations page 1c. The regulations were adopted December 31, 1959 and last amended December 9, 1989. The applicability of site plan approval and the standards to be applied are set out in 3.27 and 3.271 of the town regulations. These particular regulations were enacted in 1967 and have been most recently amended on June 17, 1989.
If the plaintiff had submitted a site plan to the planning and zoning commission, that body would have had to determine CT Page 2934 whether the plan conformed to the zoning regulations or was a valid nonconforming use. A nonconforming use is one that was in existence at the time that the zoning regulations making that use nonconforming was enacted, and which use was previously lawful. Cummings v. Tripp, 204 Conn. 67, 91 (1987). A nonconforming use would be protected even though it does not comply with the current zoning regulations. Melody v. Zoning Board of Appeals, 158 Conn. 516,519 (1969).
The plaintiff explained his failure to submit a site plan claiming that it is excused from the necessity of filing for site plan approval because its use is a nonconforming use. In this the plaintiff confuses town zoning and planning functions and the functions of the zoning board of appeals. "There is, in fact, no controversy to take before the board of appeals, which is only authorized to review the actions of the zoning board and which is not empowered to find facts or conduct the initial determinations, which are the province of the zoning board. Blum v. Lisbon Leasing Corporation, 173 Conn. 175, 180 (1977).
The plaintiff has failed to submit any authority that a developer of land such as it could be excused from filing a site plan or to comply with obtaining town inland wetlands commission approval.
The plaintiff cites as authority for its position the case of Helicopter Associates, Inc. v. Stamford, 201 Conn. 730 (1986). That action was a declaratory judgment action seeking to have an ordinance forbidding airports in the town unless the town zoning board granted a permit and an injunction to prohibit enforcement of this ordinance against the town. In that action the plaintiff had run a heliport and had just received a commercial heliport license from the state before the town enacted the regulation.
Our Supreme Court held: "For a use to be considered nonconforming under [town zoning regulations] and under Connecticut case law, that use must possess two characteristics. First it must be lawful and second it must be in existence at the time that the zoning regulations making the use nonconforming was enacted." (emphasis in original) (citations omitted). Id. at 712.
In the case before this court, the plaintiff is not seeking an injunction or a declaratory judgment that an ordinance is invalid as to it. What it has done is to ignore the town site plan and wetland regulations and develop its land by cutting roads, building a scale, trucking material in and out, and sifting material. In short operating a sand and gravel business. The Helicopter Associates case does not help the plaintiff. CT Page 2935
In a recorded case, the Connecticut Sand Stone Corporation while operating a sand and gravel plant, a nonconforming use, in the town of Avon, added to its business the production and sale of ready-mix concrete. It erected two bins one to store cement the other for sand and gravel. The material was dumped into ready-mix concrete trucks and water added. No permits were obtained to erect the bins. The town building inspector served a cease and desist order on the plaintiff not to batch and sell ready-mix concrete and to dismantle the structures used in that business. The plaintiff appealed to the Board of Zoning Appeals which sustained the order of the building inspector. Appealed to the Court of Common Pleas which dismissed the appeal. That decision was sustained by the Supreme Court. The court held that the bins were structures within the meaning of the building code and should not have been erected without a building permit. The plaintiff attempted to claim that it was only the employment of improved and more efficient instrumentalities in the pursuit of the original nonconforming use. But the court held that it was a new undertaking — the business of manufacturing ready-mix cement. Connecticut Sand Stone Corporation v. Zoning Board of Appeals,150 Conn. 439, 443-444 (1963).
A case which might be closer to the plaintiff's position is DeFelice v. Zoning Board of Appeals, 130 Conn. 156 (1943). However, that case was an appeal from the Zoning Board of Appeals of East Haven which had sustained the town building inspector's rejection of an application to permit installation of a wet sand classifier in connection with the operation of a commercial sand pit — a nonconforming use. This action was sustained on appeal. "The board could properly have found that this constituted a departure from the original nature and purpose of the use and augmented the excavation previously conducted by a process of manufacture. Zoning cannot be employed to prevent an owner taking earth products from his land. But if his sand pit or quarry is in a residence district he may be prevented from treating the product in that place! Bassett, Zoning, p. 215." Id. at 163. Query whether the first sentence of the quoted material is still the law?
The Zoning Board of Appeals cannot usurp the job of the town zoning or planning agency. The job of the board of zoning appeals is to determine if the zoning board and/or the planning commission and enforcement officer acted properly in making factual determination. It is not the job of the board of zoning appeals to find if a use is nonconforming. That is the job of the town planning and zoning agencies.
In the present case the issues is not the issuance of a building permit but the failure to file a site plan and obtain wetlands commission approval. Under the North Haven Regulations, CT Page 2936 no building permit may issue in a situation such as we have here until a site plan has been approved. Regulations, page 1c, and 3.27.34 page Z-15f. Under paragraph 3.27.4 of the town regulations, the defendant could have petitioned the North Haven Planning and Zoning Commission to waive submission of a plot plan. Not having done so, he can't request the Board of Appeals to do the Planning Zoning Commission's job. It is the job of the Planning Zoning Board to decide whether or not a site plan must be filed. The Board of Zoning Appeals has the function of determining whether the decision of the Planning Zoning Board was reasonable or arbitrary under the circumstances.
In the case of Blum v. Lisbon Leasing Corporation, 173 Conn. 175
(1977) the zoning enforcement officer of the town of Lisbon issued a building permit to the defendant for the enlargement of an existing building — which was a nonconforming use. The permit noted "Non-conforming use allowed to expand. . . ." Id. at 178. The plaintiff, a neighbor, instituted an action in the Superior Court to enjoin this defendant. The court held: "There is, in fact, no controversy to take before the board of appeals, which is only authorized to review the actions of the zoning board, and which is not empowered to find facts or conduct initial determinations which are the province of the zoning board." Id. at 180.
In Lebanon v. Woods, 153 Conn. 182 (1965), an action to enjoin the defendant from violating a town zoning ordinance and a counterclaim for a declaratory judgment, the court was faced with a developer of a 400 acre tract. He wished to build 1060 houses. When he purchased the tract the town had not adopted a zoning ordinance. The town enacted zoning which required one acre as the minimum lot size. The plaintiff had prior to zoning erected five model houses on lots of less than one acre. Subsequent to the adoption of the zoning ordinance the plaintiff erected fourteen houses in two sections on lots which did not conform to the zoning ordinances. The issue before the court was "whether or not the entire tract is, as a matter of law, a nonconforming use because of the activities on the lots in sections 3 and 4." Id. at 197. "To be a nonconforming use the use must be actual. It is not enough that it be a contemplated use nor that the property was bought for the particular use. The property must be so utilized as to be `irrevocably committed' to that use. Fairlawns Cemetery Assn., Inc. v. Zoning Commission, 138 Conn. 434, 443-445,86 A.2d 74 (1952); Wallingford v. Roberts, 145 Conn. 682, 684,146 A.2d 588 (1958)" Lebanon v. Woods, 153 Conn. at 196.
The claim of the present plaintiff that a nonconforming use existed and exempted it from the site plan regulation caused the Board of Zoning Appeals to delve into the question of nonconforming use and abandonment of nonconforming use and CT Page 2937 expansion of nonconforming use all of which was irrelevant to the specific issue before the board. However, one of the reasons cited by the board for denial of the appeal from the order of the Zoning Enforcement Officer's Cease and Desist Order was that the board found that there was a need for site plan approval. In this the board was correct. The board never discussed the issue of a need for wetlands commission approval.
It very well may be that the plaintiff may be able to convince the planning and zoning commission that its activities are proper under a nonconforming use, and it may be able to secure approval from the town inland wetlands agency.
"`Where a zoning authority has stated its reasons [for its action], in accordance with General Statutes 8-3, the reviewing court ought only to determine whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations. DeMarie v. Planning Zoning Commission, 159 Conn. 534, 540, 271 A.2d 105 (1970). The [commission's action] must be sustained if even one of the stated reasons is sufficient to support it. Zygmont v. Planning Zoning Commission, 152 Conn. 550, 553, 210 A.2d 172 (1965); First Hartford Realty Corporation v. Plan Zoning Commission, 165 Conn. 533,543, 388 A.2d 490 (1973). If any one of the reasons supports the action of the commission, the plaintiff must fail in his appeal. Senior v. Zoning Commission, 146 Conn. 531, 534, 153 A.2d 415
(1959), appeal dismissed., 363 U.S. 143, 80 S.Ct. 1983,4 L.Ed.2d 1145 (1960) (brackets in original) Goldberg v. Zoning Commission,173 Conn. 23, 25-26 (1977).
The decision of the North Haven Board of Zoning Appeals is affirmed.
Joseph B. Clark, Judge