[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
FACTUAL AND PROCEDURAL BACKGROUND
The Church of the Blessed Sacrament owns a parcel at 322 Circular Avenue in Hamden. In 1964, after receiving appropriate site plan approval, the church constructed a school building on the parcel for use as a junior high school. That school building was an appropriate use in the zone under the then existing zoning regulations. The Church of the Blessed Sacrament operated the Reverend Daniel J. Barry Junior High School at the location until June of 1992 when the school was closed for financial reasons. After the school was closed, the pastor of the church felt that a cooling off period was appropriate as many parishioners were upset over the school closure, and the church did not want anyone to believe that any deception had taken place with respect to the reason for the closure of the Barry Junior High School. The evidence is clear that the parish closed the school because it could not afford to keep it open.
Beginning in May of 1993, the parish engaged in discussions with representatives of the New Haven Board of Education for New Haven to lease the site for use as a regional magnate school to be known as the Hyde Leadership School. These lease discussions were initiated by the City of New Haven who approached the parish. A lease for the use of the property was signed in July of 1993.
The Hamden Zoning Enforcement Officer determined that the utilization of the school building by the New Haven Board of Education for the Hyde School did not constitute a change in use and, therefore, was allowed under the Hamden Zoning Regulations. Abutting property owners appealed the Zoning Enforcement Officer's decision to the Zoning Board of Appeals in August of 1993. The Board of Appeals reversed the Zoning Enforcement Officer and the parish and the City of New Haven appealed that reversal to this court. On February 2, 1995, this court vacated the Hamden Zoning Board of Appeals decision and remanded the matter to that Board.
On remand, the court directed the Board to consider, and it did consider, the following questions: (1) Whether or not a non-conforming use, known as the Reverend Daniel J. Barry Junior High CT Page 1181 School, was abandoned at any time between the closing of the Barry Junior High School in 1992 and the proposed opening of the Hyde School in 1993; (2) Whether or not the Hyde School is a protected non-conforming continuation of Barry Junior High School; and (3) If the Zoning Board of Appeals finds that the non-conforming use is the Blessed Sacrament parish religious education activity, whether or not there had been a change in the character of the use.
In a decision published in the New Haven Register on June 29, 1995, the Zoning Board of Appeals answered the court's questions as follows: (1) The Zoning Board of Appeals found that the non-conforming use, known as the Reverend Daniel J. Barry Junior High School, was abandoned between the closing of the Reverend Daniel J. Barry Junior High School in 1992 and the opening of the Hyde School in 1993; (2) Since the Board had found abandonment, there was no purpose in answering the court's second question; and (3) The Board found that the non-conforming use was not the Blessed Sacrament parish religious education activity.
The Church of the Blessed Sacrament and the New Haven Board of Education instituted this appeal of the Zoning Board of Appeals' June 26, 1995 decision.
AGGRIEVEMENT
The evidence is clear that the affected property is owned by the Church of the Blessed Sacrament, and that the City of New Haven has a lease interest in the property. Accordingly, each plaintiff is found to be aggrieved.
DISCUSSION
In this appeal, the major efforts of all parties focus on the correctness of the, Zoning Board of Appeals' decision that the non-conforming use known as the Reverend Daniel J. Barry High School was abandoned between the closing of the Junior High School in 1992 and the opening of the Hyde School in 1993. Before reaching that dispute, however, the court feels it is appropriate to deal with an issue which only the Blessed Sacrament parish's brief directly addresses.
The parish claims that the Zoning Board of Appeals' determination that the non-conforming use was the Daniel J. Barry Junior High School and "not the Blessed Sacrament parish CT Page 1182 religious activity" was in error. The parish argues that the Barry School was but one aspect of the educational use to which the building was put by the, church. The closing of the school did not end the educational use because the church continued to use the building for its formal education program. Father Johnson, the Pastor, testified that approximately 300 students were enrolled in CCD (Confraternity of Christian Doctrine) classes in 1992.
At the time of the first hearing on this matter, the court recognized the potential parish claim that continuation of the CCD classes might result in a continuation of the non-conforming status of the site. The court specifically directed the Hamden Zoning Board of Appeals to address this question and the additional question of whether such a non-conforming use, if it were the only non-conforming use, would be expanded improperly if it served as the basis for the Hyde School.
The court finds that the Zoning Board of Appeals could reasonably have concluded that the Barry School, prior to 1992, was a pre-existing non-conforming use. But if the Barry School were abandoned, the Board of Appeals could conclude that the continued use of the premises for a portion of the previous use was insufficient to establish a new non-conforming use.
The parish argues that there was never an abandonment of the educational use, and that there was never an intent to abandon the educational use, citing DiBlasi v. Zoning Board of Appeals,224 Conn. 823 (1993). If the court agreed with the Parish on this statement, then it would overrule the finding of the Board that the educational use of the Barry School was abandoned. However, the court agrees with the Board that it had the right to find the issue to be the continuance or discontinuance, abandonment or lack of abandonment, of the school use, and if the use of the property as a school was abandoned, the parish cannot justify the use of the site for the Hyde School because of the interim operation of the CCD program at the location.
All parties agree that the Barry School was a valid, existing, non-conforming use when the school was closed in June of 1992. An understanding of the loss of the right to continue with a non-conforming use in Connecticut begins with the Supreme Court holding in Essex Leasing Inc. v. Zoning Board of Appeals,206 Conn. 595 (1988). Prior to the holding in Essex Leasing,
Connecticut employed a bifurcated system of terminating CT Page 1183 non-conforming uses. Non-conforming uses could be terminated by the traditional standard of abandonment which included consideration of intention. Non-conforming uses could also be lost through non-use and the passage of time, and this test was drafted into various local regulations. The question of whether a non-conforming use could be extinguished by the mere passage of time was clearly addressed and affirmed by the Supreme Court in EssexLeasing. In that case, the court held:
 We therefore conclude that section 8-2 encompasses, within the range of broad powers that it delegates to municipalities, the power to terminate non-conforming uses solely because of non-use for a specified period of time. Essex Leasing,
at 607.
The decision in Essex Leasing was released on March 22, 1988. The following year, the legislature passedPublic Act 89-277 which overruled Essex Leasing. Public Act 89-277 added language to § 8-2 which read as follows:
 Such regulations shall not provide for the termination of any non-conforming use solely as a result of non-use for a specified period of time without regard to the intent of the property owner to maintain that use.
It is now clear that in Connecticut the abandonment of the valuable right to a non-conforming use is a matter of intention.
The Supreme Court addressed the question of abandonment of a non-conforming use in Cummings v. Tripp, 204 Conn. 67 (1987). In that case, the court held:
 Abandonment is a question of fact which implies a voluntary and intentional renunciation. Nevertheless the intent to abandon may be inferred as a fact from the circumstances. Blum v. Lisbon Leasing Corporation, supra, 181-182. The mere discontinuance of a use where there is no intent to abandon is not enough. Friedson v. Westport, supra, 234. To establish abandonment, the `intention on the part of the owner [must be] to relinquish permanently the nonconforming uses.' Blum v. Lisbon Leasing Corporation,
supra. Because the conclusion as to the intention of the land owner is an inference of fact, it `is not reviewable unless it was one which the trier could not reasonably make.' Cummings, at 93.
CT Page 1184
It appears to the court that the legislative overrule ofEssex Leasing effectively renders meaningless pre-1989 cases dealing with a termination of non-conforming use by the mere passage of time. However, those pre-1989 cases which deal with abandonment and the evidence of abandonment would appear to continue to reflect the law of the State of Connecticut.
In Cummings v. Tripp, the plaintiff argued that there was a period of non-use from May of 1965 until April of 1967, and that this period of non-use terminated the non-conforming use even without a finding of intent to abandon. However, the Supreme Court did not rely upon abandonment without intention as to the basis for its decision. Rather, it held:
 Under the circumstances of this case, we need not decide whether the `or not used' language of the 1967 regulations set up a different standard from the test required for abandonment, or whether such a regulation would be valid. [citation omitted] Even if we assume, arguendo, that the "or not used' language added in 1967 allows a termination of a non-conforming use without a finding of an intent to abandon, the 1967 amendment cannot be retroactively applied to the `nonuse' which had occurred prior to the effective date of that amendment. Cummings, at 94.
In Cummings, the trial court had found that there was no intention by the owner to abandon the use of property. The plaintiffs argued that the finding of no abandonment was inconsistent with the finding that the property was not used for the non-conforming purpose between May 13, 1965 and April 25, 1967. The Supreme Court held that the finding that the premises were not rented from 1965 to 1967 was not inconsistent with the finding of no abandonment because the trial referee had also found that the reason the premises had not been rented was because the owner died in a fire on the premises in 1965 and the estate did not repair or convey the property until April of 1967. Therefore, the subordinate facts were sufficient to support a finding of no abandonment.
While cases such as Cummings v. Tripp, 204 Conn. 67 (1987) and Blum v. Lisbon Leasing, 173 Conn. 175 (1977) generally speak of evidence of the owner's intention to abandon, Magnano v.Zoning Board of Appeals, 188 Conn. 225 (1982), phrases the test for abandonment in a somewhat different manner. CT Page 1185
Although Magnano is a pre-Public Act 89-277 case, it clearly dealt with intentional abandonment and not simple non-use. The Supreme Court held:
 The word `discontinued' in ordinances prohibiting the resumption of a non-conforming use which had been discontinued for a specified period has been held to contain the element of intention and to require more than mere suspension or temporary secession of use. Magnano at 228.
The court then describes abandonment in its common formulation when it holds:
 It has been considered equivalent in meaning to abandoned and evidence of an intent by the owner permanently to cease the use [has been] required. Dubitsky v. Liquor Control Commission, Magnano, at 228.
However, the court goes on to hold:
 In a case in which the owner had unsuccessfully tried to lease the property during the specified period this court held that
 . . . a use . . . is not discontinued . . . by a mere temporary suspension for a reasonable time, for reasons beyond the owner's control, where there exists a manifest intention on the part of the owner to resume the nonconforming use as soon as a tenant can be found.
[citations omitted] Although a town may be able to fashion zoning ordinance so as to make the cessation of use for a certain period alone a ground for extinguishing a non-conforming use, Westbrook has not done so and we see no reason not to interpret discontinued in the Westbrook regulation as we have previously." [emphasis supplied] Magnano, at 229.
It thus appears that under the formulation for abandonment inMagnano, when there is a cessation of use for reasons beyond the owner's control, e.g. the financial inability to continue the Barry School, there is no abandonment of the non-conforming use "where there exists a manifest intention on the part of the owner to resume the non-conforming use as soon as a tenant can be obtained." Id.
CT Page 1186
It would appear that in the instant case the court could examine three propositions, in evaluating abandonment. Those propositions are: (1) Was there any intention to reopen the Barry School as a parish-run school; (2) Was there sufficient evidence that there existed a manifest intention on the part of the Blessed Sacrament Parish to resume the non-conforming use as soon as a new tenant can be found; (3) Was there sufficient evidence from which the Board could have concluded that the owner manifested an intention to cease the use.
The evidence in the record is overwhelming that there was no intention to resume the use of the premises as a parochial school. There is also an absence of evidence indicating an intention on the part of the parish to resume the non-conforming use as soon as a tenant can be obtained. It is clear that the finance council discussed the possibility of the premises being converted to condominiums, and it is equally clear that no attempt was made to market or lease the property as a school. The proposal for the use of the premises as the Hyde School was initiated by the City of New Haven, not by the parish. Applying the Magnano test, it is clear that the Board of Appeals did not abuse its discretion in finding abandonment.
However, if the test is more accurately stated in Dubitskyv. Liquor Control, 166 Conn. 120 (1970), and, therefore, the Board must have ". . . evidence of an intent by the owner permanently cease the use . . .", the factual question before the Board becomes a much more difficult decision. The evidence in support of the intention to abandon included an announcement by Father Johnson in March of 1992 that the school would close. He further announced that there were no plans for future use of the building. At the end of the school year, a newsletter was issued to teachers and students stating that it was the last newsletter to come from the junior high school. The first indication of consideration of an alternative use occurred in July 1993 when the parish council was notified that Hyde School had leased the building. There was testimony by Ellen Quentin at the hearing on June 26, 1995 that the parish had given about 125 lockers to St. Rita's School, that the lockers remained at St. Rita's to that day, and there had been no request for their return. There was testimony by Jim Wood, a member of the church finance council, that at a meeting on March 25, 1993, nine months after the school had been closed, alternative uses of the property were discussed, including the possibility of using the building for residential condominiums. Susan Hutchinson testified that she saw Father CT Page 1187 David Walker, Pastor of St. Rita's Church, inspecting lockers at the school, and that on a night in August of 1992, she saw several individuals removing lockers from the Barry Junior High School in order to take them to St. Rita's. She further testified that other educational equipment, including computers were removed. Mr. Peter Villano, Director of Administration for the New Haven Public Schools, testified that he did not contact Blessed Sacrament to lease the school for the Hyde program until September 1993, and that a lease was not consummated until June of 1993. He further testified that the contact with the parish was initiated by the City and not by the parish.
Intent can be inferred from surrounding circumstances. Blumv. Lisbon Leasing, 173 Conn. 175 (1977). In Blum, the court clearly held that abandonment in Connecticut is a question of fact. The Blum court went on to hold:
 The conclusion of intention is an inference of fact, it is not reviewable unless it is one which the trier could not reasonably make. Blum at 182.
CONCLUSION
In conclusion, the court finds that, based upon the record before it, there is no question that when the Reverend Daniel J. Barry Junior High School was closed in 1992, there was no intention on the part of the parish or the church corporation to ever reopen a parochial school on that site. The court further finds that there is evidence of an intention to abandon the use of the site as a school, and that there is no substantial evidence which shows a manifest intention on the part of the parish to resume the non-conforming use as soon as it could obtain a tenant. While the evidence is somewhat less convincing of the parish's intention to permanently abandon the use of the property, the evidence is sufficient for the Zoning Board of Appeals to have decided that there was an intention on the part of the parish to relinquish the non-conforming use.
For the foregoing reasons, the action of the Hamden Zoning Board of Appeals is sustained, and the appeal is dismissed.
BY THE COURT:
KEVIN E. BOOTH, JUDGE CT Page 1188